UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMRO HEGAB, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FAMILY DOLLAR STORES, INC.,<br><br>Defendant. | Civil Action No. 11-cv-01206 (CCC)(JAD)<br><br>ELECTRONICALLY FILED |

DECLARATION OF SETH R. LESSER

1. I am a partner in Klafter Olsen & Lesser LLP and I, with co-counsel, represent the Plaintiffs and the Class as putative Settlement Class Counsel. I am fully familiar with the facts and circumstances set forth herein, and I make this Declaration in support of the parties' Joint Motion for Preliminary Approval of Settlement Agreement, as well as for the sending of notice and the scheduling of a Final Approval Hearing.

2. Plaintiff worked as a store manager ("SM") for Family Dollar in New Jersey. In March 2011, he filed the instant action alleging that defendant misclassified its store managers in New Jersey as exempt from state overtime requirements and seeking unpaid overtime compensation on behalf of himself and all salaried store managers employed at Family Dollar stores in New Jersey at any time since March 3, 2009, the beginning of the limitations period.

3. In June 2012, this action was stayed upon request of the parties to provide an opportunity to mediate. This mediation initially was scheduled in conjunction with mediation in the parallel New York actions, *Youngblood, et. al. v. Family Dollar Stores, Inc. et al.*, No. 09-cv-3176, and *Rancharan v. Family Dollar Stores, Inc.*, No. 10-cv-7580. These consolidated federal

actions were brought under New York Labor Law and involved similar claims to the claims here: that store managers in New York were misclassified as exempt under New York law. By the time of the mediation, *Rancharan* and *Youngblood* involved extensive discovery, including the exchange of 200,000 pages of materials and 31 depositions and significant briefing of the class certification issue. The suits were on a trial-ready track at the time that extensive settlement negotiations were undertaken, negotiations that spanned months and multiple mediation and negotiation sessions.

      4.      On June 7, 2013, the district court approved settlement of these actions in New York. *Youngblood v. Family Dollar Stores, Inc.*, 09-cv-3176 (S.D.N.Y.) (ECF. No. 162) (Exhibit A attached hereto). As a result of these actions, counsel – on both sides of the case –became intimately familiar with their respective claims and defenses. This information, along with information obtained in the instant litigation, provided the parties with significant evidence of the manner in which Family Dollar operates its retail stores in New Jersey, actual job duties that store managers perform, and the opportunity to evaluate the strength of the claims if this action proceeded to trial. Following the final approval of the settlement in *Youngblood/Rancharan,* the negotiation efforts in this action became more serious and ultimately led to the settlement now being proposed.

      5.      In addition to the work undertaken in *Youngblood/Rancharan*, the parties here, before the stay was entered, engaged in discovery; Family Dollar took the deposition of plaintiff and both parties served and responded to written discovery requests and produced thousands of pages of materials including, among many other things, job descriptions, personnel files, company policies, store schematics, corporate email correspondence, and pay records.

6. The parties had discussions over discovery issues and various motions were being considered by both sides at the time the stay was entered. Counsel for both parties also spent considerable time investigating the claims. Family Dollar interviewed numerous store managers and reviewed documents at New Jersey stores, while plaintiff's counsel interviewed putative class members to determine the nature of their daily activities and other information relevant to their claims.

7. The parties prepared for mediation after the June 2012 order staying this action (ECF No. 47), but ultimately decided not to pursue mediation until clarity was reached as to the *Rancharan/Youngblood* litigation. Accordingly, upon final approval of the settlement in that litigation, settlement discussions in this lawsuit commenced anew, leading to a meeting in North Carolina on January 14, 2014 at which counsel reached an agreement in principle. The parties then negotiated the final settlement agreement, which is now being presented for preliminary approval.

8. In summary, the discovery, investigations, and settlement negotiations in the instant action and the parties' experience in *Youngblood* and *Rancharan* place the parties in a favorable position to evaluate the merits of their claims and defenses. Plaintiffs' Counsel are uniquely informed of the issues since they have taken or defended 32 depositions in this or the New York actions, reviewed hundreds of thousands of pages of documents, and spoken to hundreds of SMs, providing them with substantial insight into the strengths and weaknesses of their claims. As Class Counsel, I can unequivocally state – and believe this cannot be gainsaid – that the proposed settlement is the product of two fully informed sides negotiating intensely at arm's length. The parties believe that the settlement offers a fair and reasonable resolution of the litigation and incorporates and recognizes the substantial risks each side faced, whether at trial or

upon appeals, had the litigation continued.  By the time the parties agreed to discuss settlement, there can be no question whatsoever that both sides were well versed in the facts, circumstances, and law applicable to the disputed issues and had a comprehensive knowledge of what a potential trial record would look like.

9. Based on my firm's experience in similar matters, this settlement will provide substantial benefit to the class members.  For example, and in addition to the parallel New York cases in which my co-counsel here were also co-counsel, my firm has in recent years successfully litigated to conclusion over two dozen FLSA/state wage and hour cases and settlements that, to date, constitute millions of dollars in value.  This includes *Stillman v. Staples, Inc.*, 07-cv-849 (D.N.J.), a FLSA wage and hour case that was successfully tried to a jury verdict on behalf of 342 opt-in plaintiffs and which case is one of the rare FLSA misclassification cases that has been successfully tried to a jury verdict.  Ultimately, *Staples* resulted in an omnibus settlement totaling $42 million, *In re Staples Wage & Hour Litig.*, MDL No. 2025 (D.N.J.) (final approval obtained November 3, 2011; my firm was the agreed-upon lead counsel).  More recently, my firm successfully took a FLSA collective action to verdict in an arbitration proceeding (details are confidential pursuant to the terms of the arbitral tribunal).  These experiences permitted Plaintiffs' counsel to evaluate the risks of a trial and negotiate fair settlement terms for the class members.  A copy of my firm's resume is attached as Exhibit E hereto.

10. Similarly, Hepworth, Gershbaum and Roth, PLLC (who were, as noted, co-counsel in *Youngblood/Rancharan*) has in recent years successfully litigated over a dozen FLSA/state wage and hour actions and reached settlements that, to date, total millions of dollars in value.  A copy of this firm's resume is attached as Exhibit F hereto.

11.     Likewise, Lite DePalma Greenberg, LLC is also experienced in complex and class and collective action lawsuits, including having worked on wage and hour cases, and also were co-counsel in *Youngblood/Rancharan*. A copy of this firm's resume is attached as Exhibit G hereto.

12.     Attached as Exhibit B hereto is the parties' Settlement Agreement.

13.     Attached as Exhibit C hereto is parties' proposed Notice of Settlement of Class Action Lawsuit.

14.     Attached as Exhibit D hereto is the parties proposed Claim Form.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and corrected. Executed on this 6th day of June 2014, in Rye Brook, New York.

_____