UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMRO HEGAB, individually and on behalf of all other persons similarly situated, | Civil Action No. 11-cv-01206 (CCC)(JAD) |
| Plaintiff, | |
| v. | ELECTRONICALLY FILED |
| FAMILY DOLLAR STORES, INC., | |
| Defendant. | |

MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL
APPROVAL OF SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................1

II.    STATEMENT OF FACTS .................................................2

    A.    Procedural And Litigation History ................................2

    B.    Background Of Settlement Negotiations ................................4

III.    SUMMARY OF THE SETTLEMENT TERMS, THE CLASS'S REACTION, AND DISTRIBUTION PLAN ................................4

IV.    ARGUMENT ........................................................................6

    A.    Final Certification Is Appropriate To Resolve All Claims Against Family Dollar. ........................................6

        1.    The Settlement Meets the Requirements of Rule 23(a). .............7

        2.    The Settlement Meets the Requirements of Rule 23(b). .............9

    B.    The Notice Program Provided Settlement Class Members With The Best Notice Practicable. ................................12

    C.    The Court Should Grant Final Approval Of The Settlement. .............14

        1.    The Agreement is entitled to a presumption of fairness ...........16

        2.    The Agreement satisfies the *Girsh* factors and is fair, adequate, and reasonable. ........................................17

    D.    The Court Should Permit Payment Of Settlement Expenses From The Settlement Fund. ................................24

V.    CONCLUSION ................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<span style="font-variant:small-caps">ASES</span>

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).................................................................................6, 11

*Farley v. Family Dollar Stores, Inc.*,
  No. 12-cv-00325-RBJ-MJW (D. Colo. Mar. 21, 2013) ....................................21

*Bentkowski v. Marfuerza Compania Maritima, S. A.*,
  70 F.R.D. 401 (E.D. Pa. 1976)...........................................................................12

*Bredbenner v. Liberty Travel, Inc.*,
  No. 09-1248 (MF), 2011 WL 1344745 (D.N.J. Apr. 8, 2011)...........................18

*Clark v. Bally's Park Place, Inc.*,
  298 F.R.D. 188 (D.N.J. 2014)...............................................................................8

*Clements v. Serco, Inc.*,
  530 F.3d 1224 (10th Cir. 2008) ..........................................................................20

*Cook v. Family Dollar Stores of Conn., Inc.*,
  No. X10CV116011946, 2013 WL 1406821 (Conn. Super. Ct. Mar. 18,
  2013) ....................................................................................................................21

*Craig v. Rite Aid Corp.*,
  No. 4:08-cv-2317, 2013 WL 84928 (M.D. Pa. Jan 7, 2013)......................passim

*Desmond v. PNGI Charles Town Gaming, L.L.C.*,
  630 F.3d 351 (4th Cir. 2011) ..............................................................................20

*Eisenberg v. Gagnon*,
  766 F.2d 770 (3d Cir. 1985) ............................................................................7, 8

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ...............................................................................17

*Hall v. AT & T Mobility LLC*,
  No. 07-5325 (JLL), 2010 WL 4053547 (D.N.J. Oct. 13, 2010).........................18

*Hall v. Best Buy Co., Inc.*,
274 F.R.D. 154 (E.D. Pa. 2011) ..................................................................10, 21

*Harriel v. Wal-Mart Stores, Inc.*,
No. 11-2510 (MLC), 2012 U.S. Dist. LEXIS 97527 (D.N.J. July 13,
2012) .........................................................................................................21

*In re Aetna Inc. Sec. Litig.*,
No. CIV. A. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ....................24

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ..............................................................................15

*In re Cendant Corp. Sec. Litig.*,
109 F. Supp. 2d 235 (D.N.J. 2000), *aff'd*, 264 F.3d 201 (3d Cir. 2001) ............23

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005) ...........................................................................8, 9

*In re Family Dollar FLSA Litig.*,
637 F.3d 508 (4th Cir. 2011) .............................................................................19

*In re Gen. Motors Corp.*,
55 F.3d 768 (3d Cir. 1995) ..........................................................................15, 16

*In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*,
296 F.R.D. 351 (E.D. Pa. 2013)........................................................................16

*In re Pet Food Prods. Liab. Litig.*,
629 F.3d 333 (3d Cir. 2010) ..............................................................................23

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ....................................................................passim

*In re Prudential Ins. Co. Am. Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997)........................................................13, 14, 15, 24

*In re Remeron End-Payor Antitrust Litig.*,
Nos. Civ. 02-2007 FSH, Civ. 04-5126 FSH, 2005 WL 220314 (D.N.J.
Sept. 13, 2005) ...................................................................................................14

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003)................................................................24

iii

*In re Sch. Asbestos Litig.*,
  921 F.2d 1330 (3d Cir. 1990) ............................................................15

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ........................................15, 16, 21, 23

*Itterly v. Family Dollar Stores, Inc.*,
  No. 5:08-cv-01266-LS (E.D. Pa. Jan. 30, 2014) ................................19

*Lake v. First Nationwide Bank*,
  900 F. Supp. 726 (E.D. Pa. 1995)......................................................16

*Lazy Oil Co. v. Witco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997), *aff'd,* 166 F.3d 581 (3d Cir. 1999)..........15

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ................................................................8

*Mazon v. Wells Fargo Bank, N.A.*,
  No. 10-700, 2011 WL 6257149 (D.N.J. Dec. 14, 2011) ....................12

*McCoy v. Health Net, Inc.*,
  569 F. Supp. 2d 448 (D.N.J. 2008)..................................16, 19, 20, 22

*Mehling v. New York Life Ins. Co.*,
  248 F.R.D. 455 (E.D. Pa. 2008)........................................................23

*Mwantembe v. TD Bank, N.A.*,
  268 F.R.D. 548 (E.D. Pa. 2010)........................................................11

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ................................................................9

*Novak v. Home Depot U.S.A., Inc.*,
  259 F.R.D. 106 (D.N.J. 2009)............................................................21

*O'Brien v. Brain Research Labs, LLC*,
  No. 12-204, 2012 WL 3242365 (D.N.J. Aug. 9, 2012)................14, 24

*Premier Health Ctr., P.C. v. UnitedHealth Grp.*,
  292 F.R.D. 204 (D.N.J. 2013)..............................................................8

*Reibstein v. Rite Aid Corp.*,
  761 F. Supp. 2d 241 (E.D. Pa. 2011) ................................................................22

*Ripley v. Sunoco, Inc.*,
  287 F.R.D. 300 (E.D. Pa. 2012) .........................................................................18

*Seymour v. PPG Indus., Inc.*,
  891 F. Supp. 2d 721 (W.D. Pa. 2012) ................................................................20

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ...............................................................................7

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) .......................................................................passim

*Urnikis-Negro v. Am. Family Prosperity Servs.*,
  616 F.3d 665 (7th Cir. 2010) ..............................................................................20

*Valerio v. Putnam Assocs., Inc.*,
  173 F.3d 35 (1st Cir. 1999) .................................................................................20

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005) .............................................................11, 12, 24

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ........................................................................................7

*Wallace v. Powell*,
  288 F.R.D. 347 (M.D. Pa. 2012) ...................................................................6, 14

*Weber v. Gov't Emps. Ins. Co.*,
  262 F.R.D. 431 (D.N.J. 2009) .............................................................18, 19, 22

*Weisfeld v. Sun Chem. Corp.*,
  210 F.R.D. 136 (D.N.J. 2002) *aff'd* 84 Fed. Appx. 257 (3d Cir. 2004) ............11

*Weiss v. York Hosp.*,
  745 F.2d 786 (3d Cir. 1984) ...............................................................................7

*Youngblood v. Family Dollar Stores, Inc.*,
  No. 09 Civ. 3176(RMB), 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) ............21

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(1).........................................................................................7

Fed. R. Civ. P. 23(a)(2).........................................................................................7

Fed. R. Civ. P. 23(a)(3).........................................................................................8

Fed. R. Civ. P. 23(a)(4).........................................................................................9

Fed. R. Civ. P 23(b)(3).........................................................................................10

Fed. R. Civ. P 23(e)(1).........................................................................................12

I.      INTRODUCTION

        The parties hereby move for final approval of their settlement, which was

approved preliminarily by the Court on October 3, 2014.

        In March 2011, plaintiff Amro Hegab filed this class action alleging that

defendant, Family Dollar Stores, Inc., violated the New Jersey Wage and Hour

Law ("NJWHL") by misclassifying its store managers in New Jersey as exempt

from state overtime requirements and seeking overtime pay for hours worked in

excess of 40 per week.  On October 3, 2014, the Court conditionally certified a

settlement class of current and former Family Dollar store managers who worked

in New Jersey.

        Since preliminary approval, the court-approved Settlement Administrator,

Rust Consulting, Inc., mailed the court-approved notice to 557 class members and

established a website with information concerning the settlement.  Declaration of

Cory LeFebvre of Rust Consulting, Inc. ("Rust Dec.") ¶¶ 6, 10, attached as ex. A to

the Declaration of Seth R. Lesser ("Lesser Dec.").  Class counsel has worked with

Rust to ensure timely and accurate administration of the settlement and to address

requests for information from class members.  Lesser Dec. ¶ 3.  No class members

have objected to the settlement or requested exclusion.  Rust Dec. ¶¶ 15, 16.

        Accordingly, the parties present this settlement for final approval.  The result

obtained is fair and reasonable, and will enable the many class members who took

1

advantage of the settlement by filing claim forms to receive compensation for the overtime that plaintiff asserts they were wrongfully denied and to avoid the risks inherent in further litigation.

II.   STATEMENT OF FACTS

    A.   Procedural And Litigation History

Plaintiff worked as a store manager for Family Dollar in New Jersey.  In March 2011, he filed this action alleging that Family Dollar misclassified its store managers in New Jersey as exempt from state overtime requirements and seeking unpaid overtime compensation on behalf of himself and all salaried store managers employed at Family Dollar stores in New Jersey at any time since March 3, 2009, the beginning of the limitations period.  In June 2012, this action was stayed upon request of the parties to permit mediation.

Counsel herein became intimately familiar with their respective claims and defenses through their participation in *Youngblood, et al. v. Family Dollar Stores, Inc., et al.*, No. 09-cv-3176 and *Rancharan v. Family Dollar Stores, Inc. et al.*, No. 10-cv-7580, consolidated state law class actions under New York state law filed in the Southern District of New York, which alleged Family Dollar had misclassified its New York store managers.  Before the successful mediation in *Rancharan* and *Youngblood,* the parties completed substantial discovery, including 31 depositions, the exchange of 200,000 pages of documents, and significant briefing of the class

issue.  On June 7, 2013, the district court approved settlement of these actions.
*Youngblood v. Family Dollar Stores, Inc.*, No. 09-cv-3176, Order Granting Final
Approval of Class Action Settlement and Judgment (S.D.N.Y. June 7, 2013) (ECF
No. 162).  The information and the information discovered in that litigation, along
with the information and discovery in the instant action, provided the parties with
substantial evidence about Family Dollar retail stores, including the stores in New
Jersey, the actual job duties performed by store managers, and a full opportunity to
evaluate the strengths and weaknesses of their claims and defenses.

     The parties here engaged in discovery before the stay.  Family Dollar took
the deposition of plaintiff, both parties served and responded to written discovery
requests, and thousands of pages of materials were exchanged, including, among
other things, job descriptions, personnel files, company policies, store schematics,
and pay records.  Lesser Dec. at ¶ 7.  The parties discussed discovery issues and
were considering various motions at the time the Court entered the stay.

     In addition, counsel spent considerable time investigating the claims and
defenses.  Family Dollar interviewed store managers, obtained declarations from
numerous store managers, and reviewed documents at several New Jersey stores.
Plaintiff's counsel interviewed putative class members to determine the nature of
their daily activities and other information relevant to their claims.  Lesser Dec. at
¶ 8.

B.    Background Of Settlement Negotiations

The parties prepared for mediation after the June 2012 order staying this action, but ultimately decided not to pursue mediation until the New York class actions were resolved in May 2013.  But once the New York actions were fully resolved, the parties met in January 2014 and reached an agreement in principle and thereafter negotiated the full Settlement Agreement and notice plan.

* * * *

Based on the discovery, fact investigations, and settlement negotiations in the instant action and the parties' experience in *Rancharan* and *Youngblood,* the parties were in an exceedingly favorable position to evaluate the strengths and the weaknesses of their claims and defenses.  Plaintiff's counsel are well-experienced in this area of the law and informed of the issues herein.  Similarly, Family Dollar has fully evaluated the strengths and weaknesses of its defenses.  The settlement herein is the product of fully informed parties negotiating forcefully and at arm's length.  The settlement provides a fair and reasonable resolution of this action and takes into account the substantial risks each side faced had the litigation continued.  Finally, the response of the settlement class has been extremely positive.

III.   SUMMARY OF THE SETTLEMENT TERMS, THE CLASS'S
       REACTION, AND DISTRIBUTION PLAN

The Settlement Agreement ("Agreement") provides that Family Dollar will pay a maximum amount of $1.15 million to resolve the misclassification claims of

4

557 potential class members who worked in New Jersey as Family Dollar salaried

store managers at any time from March 3, 2009 to October 3, 2014.  ECF No. 49-3

at II, V.E.  All payments under the settlement will be made from this gross amount,

including distributions to individuals who filed proper claims, attorney's fees and

litigation costs, an enhancement for plaintiff Hegab, the cost of administering the

settlement, and all payroll and withholding taxes.  *Id.* at V.E.1.  In exchange for

these payments, Family Dollar receives a waiver and release of all claims that were

or could have been asserted based on the alleged facts in the complaint.  *Id.* at V.D.

No class member has objected to the settlement or requested exclusion.  Rust Dec.

at ¶¶ 15-16.

Rust mailed the Court-approved notice to 557 class members.  Rust Dec. at ¶

10.  The notice described the material terms of the settlement to permit members of

the class to make informed choices.  Rust Dec. attachment of Notice of Proposed

Settlement and Right to Opt Out.

Rust also established a toll-free telephone number and website.  Rust Dec. at

¶¶ 5-6.  Rust traced returned mail, resent the notice to individuals who were found

by tracing, and sent notice packets in response to requests for them.  Rust Dec. at ¶

11.  Rust responded to questions from class members and worked with the parties'

counsel to ensure that the class members received proper notice in accordance with

the Court's Preliminary Approval Order and the Settlement Agreement.  Rust Dec.

at ¶ 5; Lesser Dec. at ¶ 3.  Rust will disburse payments to class members within 30 days after the effective date as defined in the Agreement.  Agreement at V.G.2. Rust also will handle tax withholding determinations and payments and will issue W-2 forms.  *Id.* at V.G.3.

IV.   <u>ARGUMENT</u>

    A.    Final Certification Is Appropriate To Resolve All Claims Against <u>Family Dollar.</u>

In *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court confirmed the legitimacy of class certification for settlement purposes, explaining that "the 'settlement only' class has become a stock device" and that "all Federal Circuits recognize[d] [its] utility."  *Id.* at 618; *see In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 307 (3d Cir. 1998).  Here, the Court already held that Rule 23 requirements were satisfied when it preliminarily certified a settlement class on October 3, 2014.  The parties submit that the Court was correct in preliminarily certifying the settlement class and hereby request that the following settlement class be finally certified:  all current and former salaried Family Dollar store managers employed in New Jersey at any time from March 3, 2009 to October 3, 2014 – the date of the Preliminary Approval Order.

Before granting final approval of a class settlement, the Court must make a final determination that certification of the settlement class is proper.  *Wallace v. Powell*, 288 F.R.D. 347, 361 (M.D. Pa. 2012) (citing *In re Gen. Motors Corp.*, 55

6

F.3d 768, 797 (3d Cir. 1995)).  The Court must be satisfied that the proposed class

meets all of the requirements of Rule 23(a) and that the action is sustainable under

Rule 23(b).  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011).  Here, all

the requirements of Rules 23(a) and (b) have been met for settlement purposes.

      1.   <u>The Settlement Meets the Requirements of Rule 23(a).</u>

Rule 23(a) establishes four requirements for class actions:  (1) numerosity,

(2) commonality, (3) typicality, and (4) adequacy of representation.  The parties

agree that, for settlement purposes, these four requirements are met.

First, "the class is so numerous that joinder of all members is impracticable."

Fed. R. Civ. P. 23(a)(1).  The class includes 557 current and former store managers

who worked at Family Dollar stores in New Jersey.  The numerosity requirement is

generally satisfied by a class size greater than 40.  *Stewart v. Abraham*, 275 F.3d

220, 226-27 (3d Cir. 2001); *see also Eisenberg v. Gagnon*, 766 F.2d 770, 785-86

(3d Cir. 1985) (90 class members); *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir.

1984) (92 class members).  Since the settlement class of 557 members far exceeds

this threshold, this requirement is satisfied.

Second, the commonality factor examines whether "there are questions of

law or fact [which are] common to the class."  Fed. R. Civ. P. 23(a)(2).  This factor

requires that class members' claims depend upon a "common contention" capable

of class-wide resolution.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551

(2011); *Clark v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 195-96 (D.N.J. 2014).
The plaintiff must raise a question that will "generate common *answers* apt to drive
the resolution of the litigation." *Premier Health Ctr., P.C. v. UnitedHealth Grp.*,
292 F.R.D. 204, 220 (D.N.J. 2013) (quoting *Dukes*, 131 S. Ct. at 2551) (emphasis
in original). The commonality requirement does not demand "identical claims or
facts among class members." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597
(3d Cir. 2012). Rather, "even a single common question will do." *Id.* (quoting
*Dukes*, 131 S. Ct. at 2556).

Here, whether settlement class members were properly classified as exempt
from state overtime requirements meets the commonality requirement for purposes
of settlement. *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928, at *6
(M.D. Pa. Jan 7, 2013) (employer's designation of assistant managers as exempt
from overtime compensation met the commonality requirement).

Third, "the claims or defenses of the representative parties [must be] typical
of the claims or defenses of the class" to meet the typicality requirement. Fed. R.
Civ. P. 23(a)(3). A claim is typical if it presents "common issues of law and fact
that justify class treatment." *Eisenberg*, 766 F.2d at 786. Generally, the typicality
requirement is satisfied for the same reasons that the commonality requirement is
met. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005). The threshold
for satisfying the typicality prong is low and if "the claims of the named plaintiffs

and putative class members involve the same conduct by the defendant, typicality"

is established "regardless of factual differences." *Newton v. Merrill Lynch, Pierce,*

*Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001).

Here, plaintiff and all settlement class members allege the same injury and

seek the same relief.  Compl. ¶¶ 19, 33, 35.  Because, like plaintiff's claim, "each

Class Member's claim flows directly" from the alleged misclassification of store

managers, the typicality requirement is satisfied.  *Craig*, 2013 WL 84928 at *6.

Finally, "the representative parties [must] fairly and adequately protect the

interests of the class."  Fed. R. Civ. P. 23(a)(4).  This element requires a two-fold

showing that (1) the interests of the named plaintiff are sufficiently aligned with

the class interests and (2) plaintiff's counsel is qualified to represent the class.  *In*

*re Cmty. Bank*, 418 F.3d at 303.  Here, plaintiff seeks to prove that Family Dollar

misclassified its New Jersey store managers and plaintiff's counsel have extensive

experience litigating and settling other class actions and have represented plaintiffs

in similar class actions against Family Dollar.  Lesser Dec. at ¶ 10.

Thus, for settlement purposes, all four requirements of Rule 23(a) are met.

> 2.      The Settlement Meets the Requirements of Rule 23(b).

Here, class treatment is appropriate pursuant to Rule 23(b)(3) because (1)

common questions of law or fact predominate over individual questions and (2) a

class action is a superior method to resolve the controversy fairly and efficiently. Fed. R. Civ. P. 23(b)(3); *In re Prudential*, 148 F.3d at 309.

a.   <u>Common questions of law and fact predominate.</u>

The predominance analysis "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Sullivan*, 667 F.3d at 297 (quoting *Amchem*, 521 U.S. at 623).  The focus of the predominance inquiry is on "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Id.* at 299.  As long as "common liability issues that are susceptible to class-wide proof constitute a significant part of the case, predominance may be satisfied even where damages must still be proven individually." *Hall v. Best Buy Co., Inc.*, 274 F.R.D. 154, 166-67 (E.D. Pa. 2011) (citing *Chiang v. Veneman*, 385 F.3d 256, 273 (3d Cir. 2004)).

Here, plaintiff's central allegation is common to all members of the class, and all class members have been allegedly injured by the same course of conduct. This question is focused on the conduct of Family Dollar, namely, the designation of New Jersey store managers as exempt from overtime.  Thus, because questions regarding liability are "mirrored by each individual [settlement class] member" the predominance element is met for settlement purposes.  *Craig,* 2013 WL 84928, at *7.

10

b.    A class action is superior to numerous individual actions

The superiority analysis under Rule 23(b)(3) requires consideration of four factors:  (1) class members' individual interest in controlling the prosecution of the action; (2) the extent of similar litigation previously commenced by members of the class; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties of managing the class action.  *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 145-46 (D.N.J. 2002) *aff'd* 84 Fed. Appx. 257 (3d Cir. 2004). When certifying a class for settlement purposes, the "manageability" factor need not be considered.  *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems. . . [since] there [would] be no trial.") (internal citations omitted). [1]

First, settlement class members have little interest in prosecuting separate actions because potential damages are modest.  *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 233 (D.N.J. 2005); *Mwantembe v. TD Bank, N.A.*, 268 F.R.D. 548, 562 (E.D. Pa. 2010) ("the lesser the potential damages, the less the interest is because separate suits may be impracticable").  In any event, individual settlement class members have the option to opt-out of the settlement and pursue their claims

---

[1]  Family Dollar denies that plaintiff could satisfy Rule 23 requirements outside the settlement context and reserves the right to contest class treatment if the settlement is not finally approved.

individually.  Second, that no settlement class member has commenced litigation

concerning this controversy demonstrates a lack of interest in pursuing separate

claims.  *See In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d at 316.

Third, maintaining the litigation in this forum is desirable since the only Family

Dollar stores at issue, and most settlement class members reside, in New Jersey.

*Bentkowski v. Marfuerza Compania Maritima, S. A.*, 70 F.R.D. 401, 405 (E.D. Pa.

1976) (where majority of potential class members resided in Pennsylvania, New

Jersey, Maryland, and Virginia, the Eastern District of Pennsylvania was desirable

forum).  And, for settlement purposes, "concentrating litigation in [a single] forum

is desirable" *Varacallo*, 226 F.R.D. at 234.

For these reasons, the Court should grant final certification of the proposed

settlement class.

B.   The Notice Program Provided Settlement Class Members With The
     Best Notice Practicable.

To protect the rights of absent class members, Rule 23(e)(1) requires that all

class members be provided the best practicable notice of the settlement.  Fed. R.

Civ. P. 23(e)(1).  Such notice should "apprise interested parties of the pendency of

the settlement proposal and to afford them an opportunity to present" objections.

*Varacallo*, 226 F.R.D. at 225 (citation omitted).  Rule 23(e) notices have been

approved if they state "clearly and concisely" in plain language, *Mazon v. Wells*

*Fargo Bank, N.A.*, No. 10-700 (RBK/KMW), 2011 WL 6257149, at *3 (D.N.J.

12

Dec. 14, 2011), (1) the nature of the litigation, (2) the settlement's general terms,
(3) that complete information can be obtained from court files, and (4) that any
member of the class may appear and be heard at the final fairness hearing, *In re
Prudential Ins. Co. Am. Sales Practices Litig. ("Prudential I")*, 962 F. Supp. 450,
527 (D.N.J. 1997)).

Here, as the Court determined in its October 3 Order Granting Preliminary
Approval, the content of the notice meets the requirements of Rule 23(e).  First, the
notice explains the nature of the pending litigation, in particular that it pertains to
New Jersey Family Dollar store managers who worked more than 40 hours a week
and did not receive overtime compensation.  Second, the notice informs settlement
class members of the pending settlement, how their payments were calculated, and
the material settlement terms, including relevant deadlines and what they give up
by participating in the settlement.  In addition, the claim form informs settlement
class members of the number of qualifying workweeks he or she worked during the
relevant period, allowing class members to calculate the approximate amount they
will receive under the settlement.  Rust Dec. attachment of Claim Form.  Third, the
notice informs members of the settlement class how they can obtain a copy of the
complete Agreement.  Finally, the notice explains their right to file objections and
appear at the final fairness hearing.

The method of dissemination of notice here satisfied Rule 23(e)(1)(B).  Rust mailed individual notice forms that described the settlement's material terms to the 557 class members.  Notifications that were returned as undeliverable were re-sent if another address could be traced.  Rust provided a toll-free telephone number and website by which class members could obtain information and responded to class member's questions.  *See, e.g.*, *O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 WL 3242365, at *12 (D.N.J. Aug. 9, 2012) (notice by mail, website and toll-free hotline satisfied Rule 23(e)); *Wallace*, 288 F.R.D. at 367 (same).  Settlement class members were given a reasonable amount of time, 45 days from the date of mailing, to return a claim form, mail an opt-out request, or object to the settlement. *See, e.g.*, *In re Remeron End-Payor Antitrust Litig.*, Nos. Civ. 02-2007 FSH, Civ. 04-5126 FSH, 2005 WL 220314, at *19 (D.N.J. Sept. 13, 2005) (30 days to file objections); *In re Prudential I*, 962 F. Supp. at 562 (courts routinely approve of "deadlines of between thirty and sixty days").

In sum, Rule 23(e)'s notice requirements have been satisfied since the notice fully and clearly informed settlement class members of the information needed for them to evaluate the settlement.

C.     The Court Should Grant Final Approval Of The Settlement.

Fed. R. Civ. P. 23(e) provides that a class action can be settled only with court approval.  Class action settlement approval typically involves a two-step

14

process including (1) preliminary approval of the settlement and notice to class

members and (2) a final fairness hearing.  *See In re Prudential I*, 962 F. Supp. at

562, *aff'd* 148 F.3d 283 (3d Cir. 1998).  Such approval is required to ensure that

the settlement is "fair, adequate, and reasonable."  *Lazy Oil Co. v. Witco Corp.*, 95

F. Supp. 2d 290, 330 (W.D. Pa. 1997), *aff'd,* 166 F.3d 581, 588 (3d Cir. 1999); *In

re Gen. Motors Corp.*, 55 F.3d 768, 785 (3d Cir. 1995).  In making this required

determination, courts are mindful of the "overriding public interest in settling class

action litigation."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d

Cir. 2004); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (noting

that courts encourage settlement of complex litigation "that otherwise could linger

for years").

District courts in the Third Circuit must apply an "initial presumption of

fairness" to a proposed class settlement where (1) the negotiations occurred at

arm's length; (2) there was adequate discovery; (3) the proponents of settlement

are experienced in similar litigation; and (4) a small fraction of the class objected.

*In re Warfarin Sodium*, 391 F.3d at 535; *In re Cendant Corp. Litig.,* 264 F.3d 201,

232 n. 18 (3d Cir. 2001).  District courts then examine the nine "*Girsh* factors" to

decide whether the settlement terms are "fair, reasonable, and adequate."  *In re

Cendant Corp. Litig.*, 264 F.3d at 231.  Here, the settlement is entitled to such a

presumption of fairness and the multiple *Girsh* factors weigh heavily in favor of final approval.

          1.     <u>The Agreement is entitled to a presumption of fairness</u>

In deciding whether such a presumption of fairness applies, "considerable weight" is provided to the beliefs of experienced counsel as to the merits of the settlement. *In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, 296 F.R.D. 351, 364 (E.D. Pa. 2013); *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) (same). As previously described, the parties engaged in adversarial, arm's length negotiations in order to reach settlement. The parties engaged in discovery, carefully considered the information obtained in the New York litigation, discussed the merits of the claims, and met in person to negotiate settlement. This allowed the parties to evaluate the strengths and weaknesses of their claims and defenses and reach a settlement based on well-informed minds. *See In re Warfarin*, 391 F.3d at 537 (relevant question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."). The parties are represented by counsel who specialize in employment matters, including the type of wage and hour class claims herein. *See McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 458 (D.N.J. 2008). Finally, no member of the proposed settlement class has objected or opted-out of the settlement. Thus, the settlement is entitled to a presumption of fairness. *In re Gen. Motors*, 55 F.3d at 785.

2.    The Agreement satisfies the *Girsh* factors and is fair, adequate, and reasonable.

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit identified the factors a district court must consider when assessing a class action settlement's substantive fairness. These factors include (1) the complexity, expense and likely duration of the litigation; (2) reaction of the class to the settlement; (3) stage of the proceedings and amount of discovery completed; (4) risks of proving liability; (5) risks of proving damages; (6) risks of maintaining the class through trial; (7) ability of the defendant to withstand a greater judgment; (8) reasonableness of settlement fund in light of best possible recovery; and (9) reasonableness of settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* at 156-57. Here, the *Girsh* factors fully support the settlement.

The first *Girsh* factor – the complexity, expense, and likely duration of the litigation – weighs in favor of approval of this settlement. If the Court does not approve this settlement, significant additional time, effort, and expense will be incurred to resolve discovery disputes, brief dispositive motions and a motion to certify the class, prepare for and complete trial, make post-trial submissions, and pursue likely appeals. By reaching a favorable settlement at this stage, both sides seek to avoid further expense and delay and plaintiff can ensure recovery for all class members who file proper claims. This factor weighs in favor of settlement.

17

*See Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 311 (E.D. Pa. 2012); *Hall v. AT & T Mobility LLC*, No. 07-5325 (JLL), 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010).

The second *Girsh* factor – the reaction of the class to the settlement – also supports approval here.  The settlement class members approve of the settlement.  No class member objected or requested to be excluded.  Rust Dec. ¶¶ 15-16.  256 class members submitted claim forms, resulting in a claims rate of 45.96 percent.  Rust Dec. ¶ 13.  The 256 claims filed account for 55.04 percent of the settlement amount allocated to class members.  *Id.*  With such overwhelming support, this factor supports approval of the settlement.  *See Sullivan*, 667 F.3d at 321; *Weber v. Gov't Emps. Ins. Co.,* 262 F.R.D. 431, 445 (D.N.J. 2009).

The third *Girsh* factor – stage of the proceedings and amount of discovery completed – also favors approval of the settlement.  Under this factor, the parties must have an "adequate appreciation of the merits of the case before negotiating" a class settlement.  *See In re Prudential*, 148 F.3d at 319.  Here, the parties possessed significant information about the issues before beginning settlement negotiations.  The parties also interviewed numerous Family Dollar store managers and Family Dollar took the deposition of the named plaintiff.  Counsel also were involved in the New York litigation, as described.  *Bredbenner v. Liberty Travel, Inc.*, No. 09-1248 (MF), 2011 WL 1344745, at *12 (D.N.J. Apr. 8, 2011) (citing *In re Gen. Motors Corp.*, 55 F.3d at 813) (discovery in a parallel proceeding supported this

18

factor).  Since the parties reached the settlement with "a clear view of the strengths and weaknesses of their case[]," this factor favors approval.  *McCoy*, 569 F. Supp. 2d  at 461.

The fourth and fifth *Girsh* factors – risks faced by the class in establishing liability and damages – support approval of the settlement.  These factors require the Court to "survey the possible risks of litigation" to balance the likelihood of success and a potential damages award if the action were taken to trial against the benefits offered by an immediate settlement.  *In re Prudential*, 148 F.3d at 319. Even in cases where establishing liability appears to be a near certainty, "a jury trial carries an inherent risk for both sides of a case."  *Weber*, 262 F.R.D. at 445.

Although plaintiff believes his claim is strong, he recognizes that he faces meaningful risk without a settlement.  Family Dollar has prevailed on summary judgment against the named plaintiff in a potential class action in Pennsylvania alleging store manager misclassification, *see Itterly v. Family Dollar Stores, Inc.,* No. 5:08-cv-01266-LS, Order (E.D. Pa. Jan. 30, 2014) (ECF No. 40), and obtained more than 60 similar summary judgments in a MDL proceeding in North Carolina. *See In re Family Dollar FLSA Litig.*, 637 F.3d 508 (4th Cir. 2011).  Family Dollar likewise believes its defense is strong, but understands it is subject to the inverse risks confronting plaintiff.  The settlement alleviates the uncertainty on both sides. *See also* Lesser Dec. ¶¶ 12-15 (further addressing this point).

Even if liability could be established, the parties dispute the proper method for estimating damages. *See McCoy*, 569 F. Supp. 2d at 462 (that parties "insisted on vastly different methodologies for determining damages" counseled in favor of settlement). Family Dollar believes that the half time overtime method is proper for misclassification claims. *See Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351 (4th Cir. 2011); *Urnikis-Negro v. Am. Family Prosperity Servs.*, 616 F.3d 665 (7th Cir. 2010); *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999). Some district courts, however, including a district court in this circuit, have questioned the applicability of the half-time method to damage calculations. *See Seymour v. PPG Indus., Inc.*, 891 F. Supp. 2d 721, 737 (W.D. Pa. 2012) (noting that whether half-time method applied to each individual plaintiff was jury question). The risk of what standard would be applied weighs in favor of settlement. *See Craig*, 2013 WL 84928, at *9 (method of damage calculations was crucial unresolved issue that weighed in favor of settlement approval).

Without settlement, the class faces considerable risk of recovering less than the settlement amount or nothing at all. The fourth and fifth *Girsh* factors support approval.

The sixth *Girsh* factor – the risks of maintaining the class action through trial – also weighs in favor of this settlement. Even where a settlement class may

be appropriate for class treatment, there is "significant risk that such a class would create intractable management problems if it were to become a litigation class, and therefore be decertified." *In re Warfarin*, 391 F.3d at 537. Here, this circumstance applies. Family Dollar would vigorously oppose certification if this litigation goes forward and the plaintiff bears significant risk in obtaining and maintaining class treatment. *See Hall v. Best Buy Co. Inc.*, 274 F.R.D. 154, 170 (E.D. Pa. 2011). In similar misclassification actions, this Court has rejected class certification. *See Novak v. Home Depot U.S.A., Inc.*, 259 F.R.D. 106 (D.N.J. 2009); *Harriel v. Wal-Mart Stores, Inc.*, No. 11-2510 (MLC), 2012 U.S. Dist. LEXIS 97527 (D.N.J. July 13, 2012).

The risk is highlighted here, where class treatment in other state law Family Dollar store manager misclassification actions has been both granted and denied. *Compare Cook v. Family Dollar Stores of Conn., Inc.*, No. X10CV116011946, 2013 WL 1406821 (Conn. Super. Ct. Mar. 18, 2013) (denying class certification) *with Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176(RMB), 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) (granting class treatment), *and Farley v. Family Dollar Stores, Inc.*, No. 12-cv-00325-RBJ-MJW, Order (D. Colo. Mar. 21, 2013) (ECF No. 48) (granting class action certification); Lesser Dec. ¶¶ 12-20 (further addressing this point). In short, because "copious risks abound" with respect to

obtaining and maintaining a class in this action, this factor favors approval. *Craig*, 2013 WL 84928, at *9 (approving class settlement in misclassification action).

The seventh *Girsh* factor – the ability of defendants to withstand a greater judgment – is not relevant. This factor generally is relevant only when defendant is facing financial instability. *See Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011). And, even if defendant could afford a greater amount, this provides no basis for rejecting an otherwise reasonable settlement. *McCoy*, 569 F. Supp. 2d at 462-63; *Weber*, 262 F.R.D. at 446 (holding that defendant's ability to withstand a greater judgment was a "neutral factor").

Finally, the eighth and ninth factors – the reasonableness of the settlement fund in light of the best possible recovery, and reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation – further favor approval of the settlement. In this analysis, the Court "must guard against demanding too large a settlement based on its views of the merits in the litigation," because "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Sullivan*, 667 F.3d at 324. Accordingly, to assess its reasonableness, the Court must compare a proposed monetary settlement amount with "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing." *In re Prudential*, 148 F.3d at 322. In other words, these factors "evaluate whether the settlement represents a

22

good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538.

Whether a specific settlement amount is "reasonable" is not susceptible to a concrete formula, *see In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 355 (3d Cir. 2010), and a settlement may be reasonable even if it represents a "fraction" of the potential recovery.  *See In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000), *aff'd*, 264 F.3d 201 (3d Cir. 2001); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (approving settlement of 20% of best possible recovery).

Here, the $1.15 million settlement is reasonable, because it is a substantial compromise of a hotly disputed matter, providing significant benefits to members of the settlement class who filed proper claims.  More than $760,000 of the gross settlement amount was made available to the settlement class; the total estimated exposure using the half time overtime method was about $3.2 million.  Based on the claims filed, more than 54 percent of the total sum made available to the class for claims will be paid or more than $410,000.  Settlement payments to members of the class will be calculated on the basis of their proportionate share of the gross settlement amount.  Given the stage of the litigation and the risks associated with proceeding to trial, the settlement is reasonable and adequate because it provides for immediate relief as opposed to wholly speculative future recovery.  "A future

recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Class than receiving the benefits of the proposed Settlement at this time." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003); *see In re Aetna Inc. Sec. Litig.*, No. CIV. A. MDL 1219, 2001 WL 20928, at *6 (E.D. Pa. Jan. 4, 2001) (risk of delay could have deleterious effects on future recovery due to the time and value of money).

Finally, the substantial experience of counsel in this type litigation strongly favors final approval. *See Varacallo*, 226 F.R.D. at 240; *In re Prudential I*, 962 F. Supp. at 543; *O'Brien*, 2012 WL 3242365, at *12.

In sum, the *Girsch* factors weigh in favor of final approval. The settlement is "fair, adequate and reasonable," *Sullivan*, 667 F.3d at 326, and the Court should therefore grant final approval of this settlement.

D.    The Court Should Permit Payment Of Settlement Expenses From The Settlement Fund.

As discussed herein, Rust performed significant tasks to provide notice as directed by the Court. *Supra* pp. 5-6. Going forward, Rust will make settlement payments, determine payroll taxes, and issue W-2 forms to all claimants. *Id.* at 6. Rust has estimated that its expenses to complete settlement administration tasks will be $38,158. Rust Dec. at ¶ 17. Based on experience, the parties believe that this amount is reasonable. *See* Lesser Dec. at ¶ 20. Rust has and will continue to

24

provide significant benefits to the class and the Court should approve the requested expenses.

V.   <u>CONCLUSION</u>

For the foregoing reasons, the parties request that this motion be granted.

Dated: January 29, 2015

s/ Seth R. Lesser

_____

Seth R. Lesser
Fran L. Rudich (*pro hac vice*)
Klafter Olsen & Lesser LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
(914) 934-9200 (telephone)
(914) 934-9220 (facsimile)

Marc Hepworth (*pro hac vice*)
David A. Roth (*pro hac vice*)
Hepworth Gershbaum & Roth, PLLC
192 Lexington Avenue, Suite 802
New York, New York 10016
(212) 545-1199 (telephone)
(212) 532-3801(facsimile)

Mayra V. Tarantino
Lite DePalma Greenberg, LLC
Two Gateway Center, Suite 1201
Newark, NJ  07102
(973) 623-3000

Attorneys for plaintiff and the
Settlement Class

Respectfully submitted,

s/ Joel M. Cohn

_____

Joel M. Cohn (*pro hac vice*)
Elizabeth A. Cyr (*pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
(202) 887-4000 (telephone)
(202) 887-4288 (facsimile)
jcohn@akingump.com
ecyr@akingump.com

John A. Ybarra (*pro hac vice*)
Littler Mendelson, P.C.
321 North Clark Street, Suite 1000
Chicago, Illinois 60654
(312) 372-5520 (telephone)
(312) 372-7880 (facsimile)

Attorneys for defendant
Family Dollar Stores, Inc.