UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMRO HEGAB, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FAMILY DOLLAR STORES, INC.,<br><br>Defendant. | Civil Action No. 11-cv-01206 (CCC)(JAD)<br><br>ELECTRONICALLY FILED |

## DECLARATION OF SETH R. LESSER

I am a partner in Klafter Olsen & Lesser LLP and I, with co-counsel, represent the Plaintiffs and the Class as putative Settlement Class Counsel. I am fully familiar with the facts and circumstances set forth herein, and I make this Declaration in support of the parties' Joint Motion for Final Approval of Settlement Agreement and also in support of Plaintiff's Unopposed Motion for An Award of Fees and Costs and Class Representative Enhancement.

## GENERAL BACKGROUND

1. In 2011, plaintiff filed this case alleging that defendant Family Dollar Stores, Inc. (Family Dollar) misclassified its store managers in New Jersey as exempt from state overtime requirements and seeking unpaid overtime compensation on behalf of himself and all salaried store managers employed at Family Dollar stores in New Jersey at any time since March 3, 2009, the beginning of the limitations period. Plaintiffs sought overtime pay and other damages for hours worked in excess of 40 per week. This lawsuit followed upon earlier, parallel and consolidated cases in the Southern District of New York, *Youngblood, et. al. v. Family Dollar Stores, Inc. et al.*, No. 09-cv-3176, and *Rancharan v. Family Dollar Stores, Inc.*, No. 10-cv-7580,

which were were brought under New York Labor Law and involved similar claims to the claims here: that store managers in New York were misclassified as exempt under New York law.

2. After the New York cases had engaged in substantial discovery (*see* paragraph 6, below) and after those cases settled, which settlement was approved by Southern District Judge Richard Berman on June 7, 2013, the parties undertook, as discovery had commenced and was ongoing in this action, to resolve this matter. This led to the Settlement Agreement in this case that was presented to the Court for preliminary approval, which approval was granted on October 3, 2014 (ECF No. 50).

3. Since preliminary approval, the parties have worked with the Court-appointed Settlement Administrator, Rust Consulting, Inc. ("Rust"), to ensure timely and accurate administration of the Settlement and to address the many requests for information from Class members. Class Counsel has received calls, e-mails, and inquiries from Class members about the Settlement. Many of the calls address a wide range of issues – from seeking to pass on address changes or request re-mailings, to questions about dates, the litigation generally, or what Class members should expect on a going forward basis. Although anecdotal, the response has been overwhelmingly positive, and Class members have expressed how they are pleased with the Settlement.

## LITIGATION AND SETTLEMENT HISTORY

4. As previously set forth in my declaration in support of the parties' Joint Motion for Preliminary Approval of Settlement Agreement (ECF No. 49-1; from which paragraphs 2-8 are repeated here for the convenience of the Court), Plaintiff worked as a store manager ("SM") for Family Dollar in New Jersey. In March 2011, he filed the instant action.

5. In June 2012, this action was stayed upon request of the parties to provide an

opportunity to mediate.  This mediation initially was scheduled in conjunction with mediation in the parallel New York actions, *Youngblood* and and *Rancharan*, discussed above.

6. By the time of the mediation, *Rancharan* and *Youngblood* involved extensive discovery, including the exchange of 200,000 pages of materials and 31 depositions and significant briefing of the class certification issue.  The suits were on a trial-ready track at the time that extensive settlement negotiations were undertaken, negotiations that spanned months and multiple mediation and negotiation sessions.  As a result of these actions, counsel – on both sides of the case – became intimately familiar with their respective claims and defenses.  This information, along with information obtained in the instant litigation, provided the parties with significant evidence of the manner in which Family Dollar operates its retail stores generally and in New Jersey, as to actual job duties that store managers perform, and the opportunity to evaluate the strength of the claims if this action proceeded to trial.  Following the final approval of the settlement in *Youngblood/Rancharan,* the negotiation efforts in this action became more serious and ultimately led to the settlement now being proposed.

7. In addition to the work undertaken in *Youngblood/Rancharan*, the parties here, before the stay was entered, engaged in discovery; Family Dollar took the deposition of plaintiff and both parties served and responded to written discovery requests and produced thousands of pages of materials including, among many other things, job descriptions, personnel files, company policies, store schematics, corporate email correspondence, and pay records.

8. The parties had discussions over discovery issues and various motions were being considered by both sides at the time the stay was entered.  Counsel for both parties also spent considerable time investigating the claims.  Family Dollar interviewed numerous store managers and reviewed documents at New Jersey stores, while plaintiff's counsel interviewed putative

class members to determine the nature of their daily activities and other information relevant to their claims.

9.  The parties prepared for mediation after the June 2012 order staying this action (ECF No. 47), but ultimately decided not to pursue mediation until clarity was reached as to the *Rancharan/Youngblood* litigation. Accordingly, upon final approval of the settlement in that litigation, settlement discussions in this lawsuit commenced anew, leading to a meeting in North Carolina on January 14, 2014 at which counsel reached an agreement in principle. The parties then negotiated the final settlement agreement, which is now being presented for preliminary approval.

## THE CLASS ACTION SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

10.  As a result of the discovery, investigations, and settlement negotiations in the instant action and given the parties' experience in *Youngblood* and *Rancharan*, the parties here were in an exceedingly favorable position to evaluate the merits of their claims and defenses. Plaintiff's Counsel are uniquely informed of the issues since they have taken or defended 32 depositions in this or the New York actions, reviewed hundreds of thousands of pages of documents, and spoken to hundreds of SMs, providing them with substantial insight into the strengths and weaknesses of their claims. As Class Counsel, I can unequivocally state – and believe this cannot be gainsaid – that the proposed settlement is the product of two fully informed sides negotiating intensely at arm's length. The settlement offers a fair and reasonable resolution of the litigation and incorporates and recognizes the substantial risks each side faced, whether at trial or upon appeals, had the litigation continued. By the time the parties agreed to discuss settlement, there can be no question whatsoever that both sides were well versed in the facts, circumstances, and law applicable to the disputed issues and had a comprehensive

knowledge of what a potential trial record would look like. Furthermore, the reaction of the Settlement Class has been exceedingly positive, and Class Counsel has received a number of messages of thanks from Class Members who support this Settlement.

11. This $1.115 million settlement is reasonable because it is a substantial compromise of a fiercely disputed matter that will provide significant and certain benefits to each Settlement Class member, with gross payments averaging approximately $2,065. Since the amount each Class member will receive will be proportional to his or her time worked within the applicable statute of limitations, fairness in payments will result.

12. While plaintiffs may have been able to obtain a larger amount at trial, this Settlement provides certain relief now to the Class without the risks faced by a motion for class certification, much less possible the trial itself and the possibility of decertification, and/or summary judgment prior to trial. These are distinctly real possibilities in a misclassification case involving store managers (as opposed to assistant store managers, who have, virtually by definition less managerial authority) and are undeniably present here. As to class certification, while certification was granted in *Youngblood/Rancharan* (and in another case in Colorado), Family Dollar defeated class certification in a case parallel to this one in Connecticut. *Cook v. Family Dollar Stores of Conn., Inc.*, No. X10CV116011946, 2013 WL 1406821 (Conn. Super. Ct. Mar. 18, 2013) (denying class certification); compare *Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176(RMB), 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) (granting class treatment), *and Farley v. Family Dollar Stores, Inc.*, No. 12-cv-00325-RBJ-MJW, Order (D. Colo. Mar. 21, 2013) (ECF No. 48) (same). As to the merits, Family Dollar has prevailed on summary judgment against the named plaintiff in a potential class action in Pennsylvania alleging store manager misclassification, *see Itterly v. Family Dollar Stores, Inc.,* No. 5:08-cv-

01266-LS, Order (E.D. Pa. Jan. 30, 2014) (ECF No. 40), and obtained more than 60 similar summary judgments in a MDL proceeding in North Carolina. *See In re Family Dollar FLSA Litig.*, 637 F.3d 508 (4th Cir. 2011). Indeed, even were the class to be certified, the possibility of decertification always existed, even at trial, as is captured by one of the best-known store manager misclassification litigations where the court, after hearing the two sides evidence at trial, then decertification the collective action. *Johnson v. Big Lots*, 561 F. Supp. 2d 567 (E.D. La. 2008).

13. Moreover, in recent years, more trials have been lost on misclassification claims than have been won. *Compare, e.g., Stillman v. Staples, Inc.*, No. 07-849 (KSH), 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) (collective action plaintiffs' verdict) *with Perkins v. Southern New England Telephone Co Inc.* No. 3:07-00967, Dkt No.578 (D. Conn. Oct. 24, 2011) (collective action defendant's verdict); *Henry v. Quicken Loans, Inc.,* Case No. 2:04-cv-40346-SJM-MJH (E.D. Mich. 17, 2011) (collective action defendant's verdict); *Bell v. Citizens Fin. Group*, 2:10-cv-00320 (W.D. Pa.) (same). Trials of analogous FLSA or state law collective actions are even themselves rare. When Class Counsel tried such a case to a jury verdict in 2009, creating the jury instructions took weeks of day after day of post-trial argument and deliberations between counsel and the able Hon. Patty Shwartz because there were no sufficiently comprehensive jury instructions to be found *anywhere* as precedent explicating the intricacies of the FLSA's executive exemption test – precisely the exemption at issue in this litigation.

14. If the case went to trial, plaintiffs would also have to prove that they and the Class were misclassified as exempt from overtime. This would involve a fact-intensive inquiry into the duties that these employees performed. Such claims can and would be disputed by defendant's witnesses, giving rise to credibility issues and significant risk at trial – including, as

6

just mentioned, the possibility of decertification. The Settlement Agreement appropriately takes into account these risks and still provides substantial relief to the Class.

15. Although every case is different, by comparison, in another of our recent cases, an assistant store manager settlement – which, as noted, presents a case inherently stronger for the plaintiff employees – the class member gross recoveries in other recent settlements in which Class Counsel has been involved have been $1,561 (*Alli v. Boston Market Corp.*, No. 10-cv-0004 (D. Conn.) (final approval obtained April 17, 2012 for $3 million for 1,921 class members); $1,771 (*Jenkins v. Sports Authority*, No. 09-cv-224 (E.D.N.Y.) (final approval obtained September 30, 2011 for $990,000 settlement for class of 559 co-managers); and $3,264 (*Caissie v. BJ's Wholesale Club,* No. 08-cv-30220 (D. Mass. June 24, 2010) (final approval obtained June 24, 2010 for $9.15 settlement for class of 2,803 "mid-managers"). Here, the gross recovery of approximately $2,064 is reasonably in line with these settlements.

## NOTICE AND CLAIMS ADMINISTRATION

16. Attached as Exhibit A hereto is the Declaration of Cory Lefebvre (the "Rust Dec."), a Senior Project Administrator of Rust, which firm was appointed by the Court to be the Settlement Administrator, which affidavit sets forth the notice that was effectuated pursuant to the Court's direction in the Order preliminarily approving the settlement and the response of the Class members.

17. As set forth in the Rust Declaration, Rust has complied with providing notice to the Class pursuant to the Settlement Agreement and the Court's Preliminary Approval Order, including the establishment of a website and toll-free telephone line, the mailing of the Notice to the Class. Ex. A at ¶¶ 3-13. Rust has taken care of such matters as handling inquiries from Class members (still ongoing), re-mailings, skip-tracings, resolving disputed dates of employment

(which were resolved by Family Dollar agreeing to the disputed dates from Class members), and deficiency notifications. *Id.*

18.     Rust will continue to perform these duties and those outlined in the Settlement Agreement.  Rust received 256 timely Claim Forms. The number of complete and timely postmarked Claim Forms represents approximately 45.96% of Class members. The timely postmarked Claim Forms represent approximately 55.04% of the Net Settlement Amount.  Ex. A at ¶ 13.

19.     Neither Rust, nor counsel for the parties, received any objections nor any opt-outs from the Settlement, Ex A at ¶¶ 15-16, the time for which has passed.

20.     Rust anticipates that the total cost of administration to be $38,158.00.  Ex. A at ¶ 17.  This number is, in my experience, reasonable and should be approved by the Court and while it is slightly above what was the amount set out in the Notice ($37,900), the amount is not materially different.

## CLASS COUNSEL'S REQUESTS FOR AN AWARD OF FEES AND EXPENSES AND ENHANCEMENT AWARD TO THE CLASS REPRESENTATIVE

21.     Class Counsel ask the Court to approve payment of (1) an award of attorneys' fees in the amount of $345,000 (30% of the Settlement); (2) reimbursement of Class Counsel's reasonable out-of-pocket costs and expenses in the amount of $4,462.80; and (3) a service enhancement award payment in the amount of $7,500 to the Named Plaintiff for service as the Settlement Class Representative, all of which requests defendant is not opposing.

22.     With respect to the attorneys' fee request for 30% of the Settlement amount (a request slightly lower than the typical one third most often requested in class action settlements), the total number of hours spent on this litigation so far by the three firms who are Class Counsel

has been 1040.33 hours of lawyer and legal assistant time, consisting of 436.75 hours by Klafter Olsen & Lesser LLP, for a total lodestar of $222,123.35; 427.28 hours by Hepworth Gershbaum & Roth PLLC for a lodestar of $ 266248.74; and 176.3 hours by Lite DePalma Greenberg LLC for a lodestar of $120,020.58.  The total lodestar for all the firms is $608,392.67.  The time this reflects was time actually spent, in the exercise of reasonable judgment by the lawyers and staff involved and is detail in the time records for each of the firms attached hereto as Exhibit E, F and G.  The work undertaken represents the work addressed above in connection with the investigation and filing of the lawsuit, the work undertaken in conjunction with the discovery of the case and the work involved in negotiating and effectuating the Settlement, and is detailed in the time records.  Each of the firms involved in the case had expertise and knowledge with respect to aspects of the litigation, including extensive and successful records in class action and wage hour litigation, as is set forth below.  This enabled us to prosecute the case efficiently without the need to "invent the wheel" in almost any aspect.  We also communicated regularly so as to ensure that there was not unnecessary time incurred, nor duplication of effort.  All of this time was expended on a contingency fee basis in a difficult and unsettled area of the law.  Finally, based on our experience, we also expect that there will be not insignificant time spent in the future administering the Settlement, resolving issues with the Settlement Administrator and defendant's counsel, and speaking with class members about the administration and the Settlement, including numerous telephone calls and correspondence from Class members in the coming months wanting to know about the status of the settlement, to ask where their checks are, to inquire why they were not paid (usually because they failed to submit the claims forms or failed to submit them properly or timely), to request reissued checks, etc.  There will, in addition, also be time spent overseeing the finalization of the claims process through Rust.  Based upon

experience, such time could easily to a hundred hours.

23. The expertise and experience of Class Counsel and their views are an important factor to consider in assessing the reasonableness of this Settlement. With respect to the standing, experience and expertise of my firm, attached hereto as Exhibit B is a copy of my CV and my firm resume. In this connection, I would note that, as is here specifically relevant, my firm has in recent years successfully litigated to conclusion over two dozen FLSA/state wage and hour cases and settlements that, to date, constitute over $100 million in value. This includes, as noted, *Stillman v. Staples, Inc.*, 07-cv-849 (D.N.J.), which was a FLSA wage and hour case that my firm ultimately successfully tried to a jury verdict on behalf of a collective of 342 opt-ins and which case is one of the rare FLSA misclassification cases that has, at least in recent years, been successfully tried to a jury verdict for plaintiffs. That trial, which, even pursuant to an expedited schedule, occurred nearly two years after the filing of the case, consumed six weeks of time, cost hundreds of thousands of dollars and presented innumerable contested issues of both law and fact. Although a jury verdict was obtained, the post-trial motion practice that thereupon followed was quite extensive and included, among other things, motions for judgment notwithstanding the verdict, to have the damages reduced pursuant to the "fluctuating work week" basis of calculating overtime, and for decertification of the collective class. Ultimately, the *Staples* case resulted in an omnibus settlement totaling $42 million, *In re Staples Wage & Hour Litigation*, MDL No. 2025 (D.N.J.) (final approval obtained November 3, 2011; KOL was the agreed-upon lead counsel in the same). In addition, included in the cases in which I have acted as the lead counsel are the largest FLSA/state wage and hour settlements in the District of New Jersey (the *Staples* litigation), the District of Rhode Island (*Nash v. CVS,* 09-cv-079 (D.R.I.) ($34 million settlement)), the Middle District of Pennsylvania (*Craig v. Rite Aid Corp.*, 08-cv-2317 (M.D.

Pa.) ($20.9 million settlement)), and the District of Massachusetts (*Caissie v. BJ's Wholesale Club*, 08-cv-30220 (D. Mass.) ($9.3 million settlement)). In addition to the *Stillman v. Staples* trial, my firm also tried another FLSA collective action to a successful verdict, a case which, by virtue of having been tried in an arbitration forum, has the details protected from disclosure as confidential. However, it is rare for a law firm to have tried one, much less certainly two, FLSA collective actions to successful verdict.

24. Similarly, Hepworth, Gershbaum and Roth, PLLC (who were, as noted, co-counsel in *Youngblood/Rancharan*) has in recent years successfully litigated over a dozen FLSA/state wage and hour actions and reached settlements that, to date, total millions of dollars in value. A copy of this firm's resume is attached as Exhibit C hereto.

25. Likewise, Lite DePalma Greenberg, LLC is also experienced in complex and class and collective action lawsuits, including having worked on wage and hour cases, and also were co-counsel in *Youngblood/Rancharan*. A copy of this firm's resume is attached as Exhibit D hereto.

26. The reaction of the Class to the Settlement also supports approval of the fee award and cost reimbursement request. The Court-approved notice stated the amount of fees and costs that would be requested and no objections were received in this respect.

27. Class Counsel's request for payment of fees in the amount of $345,000.00 represents a substantially negative multiplier of 0.57. Given the risk presented by this litigation and the results obtained, a negative multiplier, which represents a negative enhancement, is decidedly reasonable. It is my sincere belief that overtime wage and hour cases present at least as much risk as, and could not be undertaken were one not able to obtain a positive lodestar multiplier in, those areas, particularly if the desired goal is to obtain a substantial and significant

result for the employee class. Routinely, misclassification actions settle on an individual basis and/or at a negative multiplier and, for each successful case, there can be one or more that are not profitable. This case falls within the negative multiplier category.

28. As to reimbursement of litigation expenses, Class Counsel requests reimbursement in the amount of $4,462.80, which are the unreimbursed costs and expenses incurred in connection with the prosecution of this litigation, as follows (plus $300.00, see paragraph 29, below):

| | |
|---|---|
| Court Fees (Complaint, pro hacs) | $1447.00 |
| Subpoena Service | $195.00 |
| Photocopying | $314.87 |
| Postage/Express Mail/Messenger | $92.68 |
| Telephone/Facsimile | $4.14 |
| Travel, Mileage, Transportation | $1897.79 |
| Local Transportation (Parking, Gasoline, Railroad, Taxis) | $129.23 |
| Meals | $18.05 |
| Pacer/Lexis | $64.04 |
| TOTAL | $4162.80 |

29. The expenses incurred in the prosecution of this case are reflected on the books and records of my firm and Hepworth Gershbaum and Roth and Lite DePalma Greenberg,

12

which are available for submission to the Court upon request. These books and records are prepared from expense vouchers, receipts, and check records, and are accurate regarding all the expenses incurred. These expense items are not duplicated in our time or billing rates. As to these expenses, which constitute hard, out-of-pocket monetary expenses from the beginning of the case, we were aware that we might not recover any of these expenses, and, at the very least, would not recover anything until the litigation was successfully resolved.

30. Class Counsel also request reimbursement of the incidental costs and expenses to be incurred as a result of appearance at the Final Approval Hearing and such other incidental costs as may accrue in respect to the finalization of the Settlement – mostly mailings to clients and Rust. Such amounts are reasonably anticipated to be minimal in scope, and certainly no more than $300.00, which is the amount included in the expense request. Accordingly, the total expense and cost request is $4,462.80. Notably, the fact that Class Counsel would obtain expenses was set out in the Notice (Ex. A at attachment of Notice) and, in fact, stated $10,000.00, and no Class member objected to that amount, which was, in any event, well more than the actual, final request.

**THE PROPOSED ENHANCMENT PAYMENT TO THE CLASS REPRESENTATIVE**

31. The Settlement provides for a service enhancement payment of $7,500 to named plaintiff Amro Hegab who not only agreed to "step up" and undertake to represent the Class, but who also responded to discovery and was deposed as part of the action. Mr. Hegab also participated in strategy sessions with Plaintiff's counsel, provided factual information relating to Family Dollar's practices, procedures, and electronic systems, and assisted throughout the discovery and trial preparation process.

32. Class Counsel believes Mr. Hegab materially assisted the prosecution of this

litigation and that the service payment would be reasonable and warranted under the circumstances and in conformity with governing precedent. *See* Memorandum in Support of Plaintiffs' Unopposed Motion for An Award of Fees and Costs and Class Representative Enhancement at 11-13.

33. The fact that Mr. Hegab's enhancement award would be $7,5000 was set forth in the Notice (Ex. A at attachment of Notice) and no Class member objected.

**WHEREFORE**, Class Counsel respectfully requests the Court to (A) approve the proposed Settlement of this action; (B) approve Class Counsel's request for an award of fees and expenses in the amounts of $345,000.00 and $4,462.80, respectively; and (C) approve the..

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 29th day of January 2015, in Rye Brook, New York.

_____
Seth R. Lesser