**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

AMBRO HEGAB, individually and on behalf of other persons similarly situated,

                                       Plaintiff,

v.

FAMILY DOLLAR STORES, INC.,

                                       Defendant.

Civil Action No.: 11-1206 (CCC)


**OPINION**


**CECCHI**, District Judge.

This matter comes before the Court upon Plaintiff Ambro Hegab ("Plaintiff") and Defendant Family Dollar Stores, Inc.'s ("Defendant") Joint Motion for Final Approval of a Class Action Settlement Agreement [ECF No. 53] and Plaintiff's Unopposed Motion for Attorneys' Fees, Costs, and Class Representative Enhancement [ECF No. 52]. The Court conducted a fairness hearing on February 5, 2015. Having considered the arguments by all the parties to this matter, the Court sets forth its findings below.[1]

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

I.     **BACKGROUND**

A.     **Litigation History**

In March 2011, Plaintiff filed a class action complaint that follows on the heels of two similar cases filed in other district courts.  See Youngblood, et al. v. Family Dollar Stores, Inc., et al., No. 09-cv-3176 and Rancharan v. Family Dollar Stores, Inc., et al., No. 10-cv-7580.  The complaint alleged that Defendant violated the New Jersey Wage and Hour Law by misclassifying its store managers in New Jersey as exempt from state overtime requirements.  Plaintiff sought overtime pay for all hours worked in excess of 40 per week.

On October 3, 2014, the Court issued an order conditionally certifying a settlement class of current and former store managers in New Jersey, approving the form and manner of notice proposed by the parties, appointing settlement class counsel, appointing Plaintiff Hegab as settlement class representative, and appointing Rust Consulting, Inc. ("Rust") as settlement administrator. On January 29, 2014, the parties submitted a joint motion for final approval of a settlement agreement and Plaintiff filed an unopposed motion for attorneys' fees.

B.     **Settlement Agreement**

1.     **Terms**

The Settlement Class consists of 557 potential class members that worked as store managers in New Jersey Family Dollar stores between March 3, 2009 and October 3, 2014. Defendant agrees to pay $1.15 million to resolve the instant action.[2]  In exchange for payment of this sum, Defendant will receive a waiver and release of all claims that were or could have been

---

[2] All payments under the settlement would be made from this gross amount, including: distributions to individuals who filed proper claims, attorneys' fees and litigation costs, an enhancement for Plaintiff Hegab, the cost of administering the settlement, and all payroll and withholding taxes (if approved by the Court).  (Joint Mot. at 5.)

2

asserted based on the alleged facts in the complaint.

### 2.    Notice Plan

Rust was responsible for administering the court-approved notice plan.  Rust established a PO Box to receive communications regarding the settlement (Lefebvre Dec. at ¶ 10) as well as a toll-free phone number for class members to call with questions regarding the settlement and a website with relevant settlement information.  (Id. at ¶¶ 5-6.)

On November 7, 2014, Rust mailed the Notice of Proposed Settlement and Right to Opt-out along with a Claim Form (together, "Class Notice") to all 557 class members via First Class mail.[3]  (Id. at ¶ 10.)  The Class Notice advised class members that they could request exclusion from the class or object to the settlement on or before December 22, 2014, or submit a claim form on or before January 6, 2015.  (Id.)  In total, 265 settlement class members filed Claim Forms,[4] resulting in a participation rate of 46.68%.  [ECF No. 55.]  There were no objections to the settlement and no requests for exclusion.  (Lefebvre Dec. at ¶¶ 15-16.)

### 3.    Attorney Fees, Expenses, and Incentive Awards

Plaintiff requests: (1) attorneys' fees totaling $345,000, (2) reimbursement of litigation costs and expenses in the amount of $4,462.80, and (3) an "enhancement service award" to Plaintiff Hegab of $7,500.  (Pl.'s Mot. at 1.)  The $345,000 in attorneys' fees is 30% of the $1.15 million settlement amount.  Defendant does not oppose this motion.

---

[3] After diligent efforts by Rust—including address traces—32 Class Notices remained undeliverable.  (Id. at ¶ 11.)

[4] Although the Joint Motion notes a participation percentage of 45.96% because nine class members that filed untimely Claim Forms were initially excluded, Defendant has agreed not to challenge these late claimants, thus increasing the participation percentage to 46.68%.  [ECF No. 55.]

## II.   CLASS CERTIFICATION

Rule 23 of the Federal Rules of Civil Procedure requires the Court to engage in a two-step analysis to determine whether to certify a class action for settlement purposes.  First, the Court must determine if Plaintiffs have satisfied the prerequisites for maintaining a class action as set forth in Rule 23(a).  If Plaintiffs can satisfy these prerequisites, the Court must then determine whether the requirements of Rule 23(b) are met.  See Fed. R. Civ. P. 23(a) advisory committee's note.  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).  Rule 23(a) provides that Class Members may maintain a class action as representatives of a class if they show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

### A.      Rule 23(a) Factors

#### 1.      Numerosity

Courts will ordinarily discharge the prerequisite of numerosity if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  Plaintiffs "need not precisely enumerate the potential size of the proposed class, nor [are] plaintiff[s] required to demonstrate that joinder would be impossible." Cannon v. Cherry Hill Toyota, Inc., 184 F.R.D. 540, 543 (D.N.J. 1999) (citation

omitted).   "[G]enerally if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001) (citation omitted).

Numerosity is easily satisfied here because there were 557 potential class members and Rust mailed Claim Forms to all of them.  (Lefebvre Dec. at ¶ 10.)

### B.     Commonality

Plaintiffs must demonstrate that there are questions of fact or law common to the class to satisfy the commonality requirement.  Fed. R. Civ. P. 23(a)(2).  The Supreme Court recently clarified the standard, emphasizing that a plaintiff must show that Class Members "have suffered the same injury," not merely a violation of the same law.  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 157 (1982)).  Furthermore, the Court noted that commonality is satisfied where common questions "generate common answers apt to drive the resolution of the litigation."   Id. at 2551 (citation omitted) (emphasis in original); see also Sullivan v. DB Invs., Inc., 667 F.3d 273, 299 (3d Cir. 2011).  The claims of Class Members "must depend upon a common contention[,] . . . . [which] must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 131 S. Ct. at 2551.  Still, "commonality does not require an identity of claims or facts among Class Members[;]" rather, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183 (3d Cir. 2001) (citation omitted).

The key issue in this case is whether Defendant misclassified its store managers under New

Jersey law. This question is common to all class members. Indeed, the only variation among class members is the *amount* of overtime pay to which each class member is entitled—a problem that was remedied through the Claims Notice process. (See Lefebvre Dec. at ¶ 14.) Thus, commonality is satisfied.

### C.     Typicality

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical of the claims . . . of the class. The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." Barnes v. Am. Tobacco Co., 161 F.3d 127, 141 (3d Cir. 1998) (citation omitted). As with numerosity, the Third Circuit has "set a low threshold for satisfying" typicality, stating that "[i]f the claims of the named plaintiffs and putative Class Members involve the same conduct by the defendant, typicality is established . . . ." Newton, 259 F.3d at 183–84; see also Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir. 1994). The typicality requirement "does not mandate that all putative Class Members share identical claims." 259 F.3d at 184 (citation omitted); see also Hassine v. Jeffes, 846 F.2d 169, 176–77 (3d Cir. 1988).

Here, the claims made by named Plaintiff Hegab and those made on behalf of the other class members arise out of the same alleged conduct by Defendant—namely, the misclassification of store managers under New Jersey law. Consequently, the named Plaintiff's claims are typical of those brought by the class members at large. See, e.g., In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 342 (3d Cir. 2010) (affirming the District Court's certification of the settlement class where "the claims of the class representatives [were] aligned with those of the Class Members since the claims of the representatives ar[o]se out of the same conduct and core facts"); Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123, 130 (3d Cir. 1987) (holding that

the District Court did not abuse its discretion in finding the typicality requirement met because the claims brought by the named plaintiffs and those brought on behalf of the class "stem from a single course of conduct"). Thus, typicality is also satisfied.

### D.    Adequacy of Representation

Finally, the Court must consider adequacy of representation both as to the named Plaintiff and the Class Counsel under Rules 23(a) and (g). The class representatives should "fairly and adequately protect the interests of the class." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 630 (3d Cir. 1996). Such class representatives must not have interests antagonistic to those of the class. Id. In order to find an "antagonism between [the named] plaintiff[s'] objectives and the objectives of the [class]," there would need to be a "legally cognizable conflict of interest" between the two groups. Jordan v. Commonwealth Fin. Sys., Inc., 237 F.R.D. 132, 139 (E.D. Pa. 2006). In fact, courts have found that a conflict will not be sufficient to defeat a class action "unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." In re Flat Glass Antitrust Litig., 191 F.R.D. 472, 482 (W.D. Pa. 1999) (quoting In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 514 (S.D.N.Y. 1996)).

Here, there is no indication that Plaintiff Hegab's interests are antagonistic to those of the class. Plaintiff Hegab has also actively participated in the case, most notably by being deposed. (Lesser Dec. at ¶ 7.) Consequently, the adequacy requirement has been met.

Class Counsel and their respective law firms have extensive experience litigating complex class actions and obtaining class action settlements. (Lesser Dec. at ¶¶ 23-25.) Thus, the Court finds that Class Counsel has the qualifications, experience, and ability to conduct the litigation.

With this last requirement satisfied, it is clear that the Settlement Class in this case has demonstrated compliance with the elements of Rules 23(a) and (g).

**E.     Rule 23(b)(3) Factors**

The Court must next address the question of whether the class comports with the requirements of Rule 23(b).  Under 23(b)(3), the Court must find both that "the questions of law or fact common to Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  As explained below, the class action in this case readily meets these requirements of predominance and superiority.

**1.     Questions of Law and Fact Common to the Class Predominate**

To satisfy the predominance requirement, parties must do more than merely demonstrate a "common interest in a fair compromise;" instead, they must provide evidence that the proposed class is "sufficiently cohesive to warrant adjudication by representation."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997); see also Sullivan v. DB Invs., Inc., 667 F.3d 273, 297 (3d Cir. 2011) (noting that the predominance requirement is "more stringent" than the Rule 23(a) commonality requirement).  The Third Circuit has repeatedly held that predominance exists where proof of liability depends on the conduct of the defendant.  See Sullivan, 667 F.3d at 298–301 (reaffirming the Third Circuit precedent supporting this holding).  "[V]ariations in state law do not necessarily defeat predominance[] and . . . concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class."  Id. at 297.

Here, the class consists of individuals who served as Family Dollar store managers.  As such, the class members share common questions of law and fact—i.e., whether Defendant misclassified store managers under New Jersey law.  Evidence in the record supports the conclusion that common questions predominate over individual questions particular to any

putative class member.  Consequently, the predominance requirement is satisfied.

### 2.    A Class Action is Superior to Other Available Methods

To demonstrate that a class action is "superior to other available methods" for bringing suit in a given case, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 632 (3d Cir. 1996) (citing Katz v. Carte Blanche Corp., 496 F.2d 747, 757 (3d Cir. 1974) (en banc)).  One consideration is the economic burden Class Members would bear in bringing suits on a case-by-case basis.  Class actions have been held to be especially appropriate where "it would be economically infeasible for [individual Class Members] to proceed individually." Stephenson v. Bell Atl. Corp., 177 F.R.D. 279, 289 (D.N.J. 1997).  Another consideration is judicial economy.  In a situation where individual cases would each "require[] weeks or months" to litigate, would result in "needless duplication of effort" by all parties and the Court, and would raise the very real "possibility of conflicting outcomes," the balance may weigh "heavily in favor of the class action." In re Corrugated Container Antitrust Litig., 80 F.R.D. 244, 252–53 (S.D. Tex. 1978); see also Klay v. Humana, Inc., 382 F.3d 1241, 1270 (11th Cir. 2004) (finding a class action to be the superior method because it would be costly and inefficient to "forc[e] individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts"), abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008); Sollenbarger v. Mountain States Tel. & Tel. Co., 121 F.R.D. 417, 436 (D.N.M. 1988) (finding that, in contrast to the multiple lawsuits that members of a class would have to file individually, "[t]he efficacy of resolving all plaintiffs' claims in a single proceeding is beyond discussion").

To litigate the individual claims of even a fraction of the potential class members would

place a heavy burden on the judicial system and require unnecessary duplication of effort by all parties. It would not be economically feasible for the class members to seek individual redress. The litigation of all claims in one action is far more desirable than numerous, separate actions and therefore the superiority requirement is met.

## III.    FAIRNESS OF THE CLASS ACTION SETTLEMENT

Under Federal Rule of Civil Procedure 23(e), approval of a class settlement is warranted only if the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Acting as a fiduciary responsible for protecting the rights of absent class members, the Court is required to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." In re Cendant Corp. Litig., 264 F.3d 201, 231 (3d Cir. 2001) (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995)). This determination rests within the sound discretion of the Court. Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975). In Girsh, the Third Circuit identified nine factors to be utilized in the approval determination. Id. at 157. These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability ; (5) the risks of establishing damages ; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Id. (internal quotation marks, alterations, and citation omitted).

Additionally, a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar

matters, and there are few objectors. In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004). Finally, settlement of litigation is especially favored by courts in the class action setting. "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." In re Gen. Motors, 55 F.3d at 784; see also In re Warfarin Sodium Antitrust Litig., 391 F.3d at 535 (explaining that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged").

Turning to each of the Girsh factors, the Court finds as follows:

**A.    Complexity, Expense, and Likely Duration of the Litigation**

The first factor, the complexity, expense, and likely duration of the litigation, is considered to evaluate "the probable costs, in both time and money, of continued litigation." In re Cendant Corp., 264 F.3d at 233 (quoting In re Gen. Motors, 55 F.3d at 812).

The instant litigation was commenced in 2011 and the duration of this action would only be further delayed absent approval of the settlement. Indeed, significant time, effort, and expense would be incurred to resolve discovery disputes, brief dispositive motions and a motion to certify the class, prepare for and complete trial, submit post-trial submissions, and pursue likely appeals. By reaching a settlement, the parties have avoided the significant expenses connected with these steps. Lastly, the settlement provides immediate and substantial benefits for the settlement class.

As a result, this factor weighs in favor of approval of the Settlement. See In re Warfarim Sodium Antitrust Litig., 391 F.3d at 535–36 (finding that the first Girsh factor weighed in favor of settlement because "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial").

**B.     Reaction of the Class to the Settlement**

This second factor "attempts to gauge whether members of the class support the settlement." In re Lucent Techs., Inc., Sec. Litig., 307 F. Supp. 2d 633, 643 (D.N.J. 2004) (internal quotation marks and citation omitted).  The Third Circuit has found that "[t]he vast disparity between the number of potential Class Members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement." In re Cendant Corp., 264 F.3d at 235.

On November 7, 2014, notice was sent directly to the 557 potential class members.  As of the date of the Fairness Hearing, there were no objections to the settlement and no requests for exclusion.  (Lefebvre Dec. at ¶¶ 15-16.); see In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005) ("such a low level of objection is a 'rare phenomenon'") (citation omitted).  The paucity of negative feedback in the face of an extensive notice plan leads the Court to conclude that the settlement class generally and overwhelmingly approves of the settlement.  See Varacallo v. Mass. Mutual Life Ins. Co., 226 F.R.D. 207, 237–38 (D.N.J. 2005) (finding exclusion and objection requests of .06% and .003%, respectively, "extremely low" and indicative of class approval of the settlement).  Therefore, this factor weighs in favor of approval of the Settlement.

**C.     The Stage of the Proceedings and the Amount of Discovery Completed**

The Court should consider the stage of the proceedings and the amount of discovery completed in order to evaluate the degree of case development that Class Counsel have accomplished prior to settlement.  "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." In re Cendant Corp., 264 F.3d at 235 (quoting In re Gen. Motors, 55 F.3d at 813).  "Generally, post-discovery settlements

are viewed as more likely to reflect the true value of a claim as discovery allows both sides to gain an appreciation of the potential liability and the likelihood of success." In re Auto. Refinishing Paint Antitrust Litig., 617 F. Supp. 2d 336, 342 (E.D. Pa. 2007) (citing Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1314 (3d Cir. 1993)).

The Court notes that this case has been litigated for years. Certainly, a fair amount of discovery has occurred here; Defendant took the deposition of Plaintiff, both parties served and responded to written discovery requests, and thousands of pages of materials were exchanged. (Lesser Dec. at ¶ 7.) The parties also had access to the substantial discovery produced in nearly identical cases—Youngblood and Rancharan—regarding the same dispute at issue in this case (albeit, under different state laws). (See Lesser Dec. at ¶ 6.) In addition, the Settlement was reached after extensive arm's length negotiations and mediation sessions. "Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent." In re Elec. Carbon Prods. Antitrust Litig., 447 F. Supp. 2d 389, 400 (D.N.J. 2006) (citation omitted). Based on the extensive discovery and negotiations, the Court concludes that class counsel had a thorough appreciation of the merits of the case prior to settlement. Accordingly, this factor weighs in favor of approval.

**D.     Risks of Establishing Liability**

The risks of establishing liability should be considered to "examine what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." In re Cendant Corp., 264 F.3d at 237 (quoting In re Gen. Motors, 55 F.3d at 814). "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" In re Safety Components Int'l, Inc. Sec. Litig., 166 F. Supp. 2d 72, 89 (D.N.J. 2001) (quoting In re Prudential Ins. Co. Am. Sales Practice Litig.

Agent Actions, 148 F.3d 283, 319 (3d Cir. 1998)).

Class Counsel have outlined several risks to establishing liability, as exemplified by the fact that Defendant has prevailed on summary judgment against Plaintiff Hegab in a potential class action in Pennsylvania alleging store manager misclassification, see Itterly v. Family Dollar Stores, Inc., No. 5:08-cv-01266-LS, Order (E.D. Pa. Jan. 30, 2014) (ECF No. 40), and obtained more than 60 similar summary judgments in a MDL proceeding in North Carolina, see In re Family Dollar FLSA Litig., 637 F.3d 508 (4th Cir. 2011). On the Defendant's side, Family Dollar acknowledges that its defense also carries inherent risks.

In contrast, the settlement provides immediate and certain recovery for the class members. All class members who filed a claim form by the deadline (and even those who filed after the deadline) will receive a benefit in the form of payment for overtime hours worked. In light of the uncertainty of success for both sides in this litigation and the certain, immediate benefit provided by the settlement, the Court concludes that this factor weighs in favor of approval.

**E.     Risks of Establishing Damages**

This factor, like the factor before it, "attempts to measure the expected value of litigating the action rather than settling it at the current time." In re Cendant Corp., 264 F.3d at 238 (quoting In re Gen. Motors, 55 F.3d at 816). Here, even if Plaintiff could establish liability, the proper measure of damages is unclear. Defendant would argue that the half time overtime method is proper for misclassification claims. See Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351 (4th Cir. 2011); Urnikis-Negro v. Am. Family Prosperity Servs., 616 F.3d 665 (7th Cir. 2010); Clements v. Serco, Inc., 530 F.3d 1224 (10th Cir. 2008); Valerio v. Putnam Assocs., Inc., 173 F.3d 35 (1st Cir. 1999). Some district courts, however, have questioned the applicability of the half-time method to damage calculations. See Seymour v. PPG Indus., Inc., 891 F. Supp. 2d

721, 737 (W.D. Pa. 2012).  Accordingly, the Court agrees that significant risks exist in establishing both liability and damages and concludes that this factor weighs strongly in favor of approval.

### F.      Risks of Maintaining Class Action Status Through Trial

The Court also finds that the sixth factor, the risk of maintaining class action status through trial, weighs in favor of approval of the Settlement.  "Because the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial."  In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537 (internal quotation marks and citation omitted).  If the litigation proceeded, Defendant would have argued that certification was inappropriate.  As shown by other state law Family Dollar store manager misclassification actions, class certification is far from certain.  Compare Cook v. Family Dollar Stores of Conn., Inc., 2013 WL 1406821 (Conn. Super. Ct. Mar. 18, 2013) (denying class certification) with Youngblood v. Family Dollar Stores, Inc., 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) (granting class certification), and Farley v. Family Dollar Stores, Inc., No. 12-cv-00325, Order (D. Colo. Mar. 21, 2013) (ECF No. 48) (granting class action certification).  Thus, because there are significant risks in obtaining and maintaining class certification, this factor weighs in favor of approval.

### G.      The Settling Defendant's Ability to Withstand a Greater Judgment

In Cendant, the Third Circuit interpreted the seventh factor as concerning "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." 264 F.3d at 240.  The parties correctly argue that "even if defendant could afford a greater amount, this provides no basis for rejecting an otherwise reasonable settlement." (Joint Mot. at 22.)  Thus, the Court is satisfied that the settlement is fair, reasonable, and adequate, despite the possibility

that Defendant could pay a greater sum.  <u>See, e.g.</u>, <u>In re Auto. Refinishing Paint Antitrust Litig.</u>,
617 F. Supp. 2d at 344 (finding the settlement figure fair, reasonable, and adequate despite
defendants' ability to withstand greater judgment, in light of the substantial benefits provided to
Class Members); <u>In re Cendant Corp. Sec. Litig.</u>, 109 F. Supp. 2d 235, 262–63 (D.N.J. 2000),
<u>aff'd</u>, <u>In re Cendant Corp.</u>, 264 F.3d 201 (approving settlement despite lack of evidence of
defendant's ability to withstand greater judgment); <u>Weiss v. Mercedes-Benz of N. Am., Inc.</u>, 899
F. Supp. 1297, 1302–03 (D.N.J. 1995) (concluding the settlement was fair, adequate, and
reasonable despite finding defendant could withstand greater judgment).

Class members will receive substantial benefits from the settlement, and any ability of
Defendant to withstand a greater judgment is outweighed by the risk that Plaintiff would not be
able to achieve a greater recovery at trial.  In addition, as discussed above, there are significant
risks to establishing liability and damages.  <u>See</u> <u>Yong Soon Oh v. AT&T Corp.</u>, 225 F.R.D. 142,
150–51 (D.N.J. 2004) (finding that the difficulties plaintiffs would have in certifying the class and
proving damages at trial "diminish[es] the importance of this factor").

In light of these considerations, the Court concludes that this factor weighs in favor of
approval.

**H.      The Range of Reasonableness of the Settlement Fund in Light of the Best**

**Possible Recovery and the Attendant Risks of Litigation**

The eighth and ninth factors, concerning the range of reasonableness of the settlement fund
in light of the best possible recovery and the attendant risks of litigation, weigh in favor of
settlement.

> The fact that a proposed settlement may only amount to a fraction
> of the potential recovery does not, in and of itself, mean that the
> proposed   settlement   is   grossly   inadequate   and   should   be

16

> disapproved. The percentage recovery, rather must represent a
> material percentage recovery to plaintiff in light of all the risks
> considered under <u>Girsh</u>.

<u>In re Cendant Corp. Sec. Litig.</u>, 109 F. Supp. 2d 235, 263 (D.N.J. 2000) (internal quotation marks and citation omitted).

The parties argue that, given the size of the settlement class, the potential benefits available to class members, and the risks in proving liability and damages and in obtaining class certification, the settlement is, fair, adequate and reasonable. (Joint Mot. at 1-2.) The Court agrees with the parties and finds that these factors weigh in favor of approval.

## I.      Summary of <u>Girsh</u> Factors

In conclusion, the Court holds that the nine <u>Girsh</u> factors overwhelmingly weigh in favor of approval. The settlement agreement was reached after arm's-length negotiations between experienced counsel and after completion of, and access to, a significant amount of discovery. Therefore, the Court concludes that the settlement represents a fair, reasonable, and adequate result for the settlement class considering the substantial risks Plaintiff faces and the immediate benefits provided by the settlement. <u>See</u> <u>Reibstein v. Rite Aid Corp.</u>, 761 F. Supp. 2d 241, 255–56 (E.D. Pa. 2011).

## IV.   <u>NOTICE</u>

"In the class action context, the district court obtains personal jurisdiction over the absentee Class Members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." <u>In re Prudential</u>, 148 F.3d at 306 (citation omitted). Under Federal Rule of Civil Procedure 23(c), notice must be disseminated by "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.

R. Civ. P. 23(c)(2)(B); See also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 175–76, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (finding that Rule 23(c) includes an "unambiguous requirement" that "individual notice must be provided to those Class Members who are identifiable through reasonable effort").

Additionally, in this case, where a settlement class has been provisionally certified under Rule 23(b)(3) and a proposed settlement preliminarily approved, proper notice must meet the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e). Larson v. Sprint Nextel Corp., No. 07-5325(JLL), 2009 WL 1228443, at *2 (D.N.J. Apr. 30, 2009). 23(c)(2)(B) compliant notice must inform Class Members of: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the Class Members' right to retain an attorney; (5) the Class Members' right to exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on Class Members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii). Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, 177 F.R.D. 216, 231 (D.N.J. 1997) (citation omitted).

As explained above, Rust—the settlement administrator—mailed the Court-approved Class Notice to all 557 class members via First Class mail. (Lefebvre Dec. at ¶ 10.) Notifications that were returned as undeliverable were re-sent if another address could be traced. (Id. at ¶ 11.) In total, 265 settlement class members filed Claim Forms, resulting in a participation rate of

46.68%.[5]  [ECF No. 55.]  There were no objections to the settlement and no requests for exclusion. (Lefebvre Dec. at ¶¶ 15-16.)

The Court finds that the parties complied with the requirements set forth by Rules 23(c)(2)(B) and 23(e).  The notice plan was thorough and included all of the essential elements necessary to properly apprise absent settlement class members of their rights.  The written notice included: (1) an explanation of the nature of the pending litigation, (2) information regarding the pending settlement, how their payments were calculated, and the material settlement terms (including relevant deadlines and what they give up by participating in the settlement), (3) notification to class members of the number of qualifying workweeks he or she worked during the relevant period (thus allowing class members to calculate the approximate amount they will receive under the settlement), (4) procedures regarding how class members can obtain a copy of the complete settlement agreement, and (5) an explanation of class members' rights to file objections and appear at the final fairness hearing.   Rust also established a PO Box to receive communications regarding the settlement (Lefebvre Dec. at ¶ 10) as well as a toll-free phone number for class members to call with questions regarding the settlement and a website with relevant settlement information.  (Id. at ¶¶ 5-6.)

In conclusion, the Court finds that the notice fully complied with the requirements of Rules 23(c)(2)(B) and 23(e).

---

[5]As noted, *supra,* nine class members filed untimely Claim Forms and were therefore excluded from the participation percentage stated in the Joint Motion (45.96%).  However, Defendant has agreed not to challenge these late claimants, thus increasing the participation percentage to 46.68%.  [ECF No. 55.]

V.       **ATTORNEY FEES, EXPENSES, AND INCENTIVE AWARDS**

Class counsel filed an unopposed motion for an award of attorney fees and expenses in the amount of $345,000.00 and for an enhancement award of $7,500.00 to Plaintiff Hegab. The Court has considered the parties' written submissions and the oral arguments made during the fairness hearing. For the reasons that follow, the Court will grant the requested attorney fees, reimbursement of expenses, and enhancement award payment.

A.       **Standard for Judicial Approval of Fees**

Fed. R. Civ. P. 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The awarding of fees is within the discretion of the Court, so long as the Court employs the proper legal standards, follows the proper procedures, and makes findings of fact that are not clearly erroneous. In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 727 (3d Cir. 2001).

Notwithstanding this deferential standard, a district court is required to clearly articulate the reasons that support its fee determination. Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 359 (E.D. Pa. 2011); In re Rite Aid, 396 F.3d at 301. "In a class action settlement, the court must thoroughly analyze an application for attorneys' fees, even where the parties have consented to the fee award." Varacallo v. Mass. Mutual Life Ins. Co., 226 F.R.D. 207, 248 (D.N.J. 2005).

"Relevant law evidences two basic methods for evaluating the reasonableness of a particular attorneys' fee request — the lodestar approach and the percentage-of-recovery approach." Id. (internal quotation marks and citation omitted). The lodestar method is generally applied in statutory fee shifting cases and "is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." In re Cendant Corp.,

243 F.3d at 732 (internal quotation marks and citation omitted). The lodestar is also preferable where "the nature of the settlement evades the precise evaluation needed for the percentage of recovery method." In re Gen. Motors, 55 F.3d at 821; see also In re Rite Aid, 396 F.3d at 300. The percentage-of-recovery method is preferred in common fund cases, as courts have determined "that Class Members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund." Varacallo, 226 F.R.D. at 249 (internal quotation marks and citation omitted). The Court has discretion to decide which method to employ. Charles v. Goodyear Tire & Rubber Co., 976 F. Supp. 321, 324 (D.N.J. 1997). "While either the lodestar or percentage-of-recovery method should ordinarily serve as the primary basis for determining the fee, the Third Circuit has instructed that it is sensible to use the alternative method to double check the reasonableness of the fee." Varacallo, 226 F.R.D. at 249 (internal quotation marks and citation omitted).

Plaintiff argues, and the Court agrees, that the percentage-of-recovery method is appropriate in this case due to the creation of a common fund.

**B.    Percentage-of-Recovery Method**

The Third Circuit has identified a non-exhaustive list of factors that a district court should consider in its percentage of recovery analysis:

> (1) the size of the fund created and the number of persons benefitted;
> (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
> (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

In re Rite Aid, 396 F.3d at 301 (quoting Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)). The district court need not apply these Gunter fee award factors in a

formulaic way. Certain factors may be afforded more weight than others. Id. at 301. The district court should engage in a robust assessment of these factors. Id. at 302; see also Gunter, 223 F.3d at 196 (vacating district court's ruling because the fee-award issue was resolved in a "cursory and conclusory" fashion).

The Court finds that the totality of the Gunter factors weighs strongly in favor of approval of the fee award. Given the similarity and overlap of the Gunter and Girsh factors, the Court incorporates by reference the reasons given for approval of the settlement agreement. The Court will now discuss additional reasons that support approval of attorney fees in this matter.

**1.     The Size of the Fund Created and the Number of Persons Benefitted**

With regard to the size and nature of the Settlement Fund and the number of persons benefitted by the Settlement Agreement, Class Counsel obtained a settlement that creates a common fund of $1.15 million. Of the 557 class members, 265 filed Claims Forms, resulting in a participation rate of almost 47%. Accordingly, the gross amount per person (over $2000) parallels other employee misclassification cases. See Alli v. Boston Market Corp., No. 10-cv-0004 (D. Conn.) (final approval of $3 million settlement for 1,921 class members—$1,561 per person); Jenkins v. Sports Authority, No. 09-cv-224 (E.D.N.Y.) (final approval of $990,000 settlement for class of 559 co-managers—$1,771 per person); and Caissie v. BJ's Wholesale Club, No. 08-cv-30220 (D. Mass. June 24, 2010) (final approval of $9.15 million settlement for class of 2,803 "mid-managers"—$3,264 per person). Given the total settlement value, as well as the number of class members entitled to benefits and the gross amount per person, this factor weighs in favor of approval.

### 2.   Presence or Absence of Substantial Objections by Members of the Class to Settlement Terms and/or Fees Requested by Counsel

The absence of objections by settlement class members to the fees requested by class counsel strongly supports approval.  As noted above, notice was sent directly to the 557 potential class members and there were no objections to the settlement and no requests for exclusion. (Lefebvre Dec. at ¶¶ 15-16.); see In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005) ("such a low level of objection is a 'rare phenomenon'") (citation omitted).  The lack of *any* negative feedback in the face of an extensive notice plan leads the Court to conclude that the settlement class generally and overwhelmingly approves of the settlement.  See Varacallo v. Mass. Mutual Life Ins. Co., 226 F.R.D. 207, 237–38 (D.N.J. 2005) (finding exclusion and objection requests of .06% and .003%, respectively, "extremely low" and indicative of class approval of the settlement).  As such, this factor weighs in favor of approval.  See In re Lucent Techs., Inc., Sec. Litig., 327 F. Supp. 2d 426, 435 (D.N.J. 2004) (finding that this factor weighed in favor of approval where only nine of nearly three million potential Class Members objected to the fee application).

### 3.   Skill and Efficiency of Attorneys

As discussed in the section on class certification, class counsel are experienced in litigating and settling consumer class actions.  Class counsel obtained substantial benefits for the class members—despite vigorous defense by Defendant's counsel—a consideration that further evidences class counsels' competence.  Thus, this factor also weighs in favor of approval of the fee award.

### 4.   The Complexity and Duration of the Litigation

As explained in the discussion of the Girsh factors, this case has been litigated for over three years and involves uncertain legal issues.  The parties reached the settlement after access to

extensive discovery and arm's length settlement negotiations.  Thus, this factor weighs in favor of approval.

### 5.      The Risk of Non-Payment

Class counsel undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts.  (Pl.'s Mot. at 7.)  Courts recognize the risk of non-payment as a major factor in considering an award of attorney fees.  See In re Prudential-Bache Energy Income P'ships Sec. Litig., 1994 U.S. Dist. LEXIS 6621, at *16 (E.D. La. May 18, 1994) ("Counsel's contingent fee risk is an important factor in determining the fee award.  Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.").  Class counsel invested substantial effort and resources to obtain this favorable settlement.  Accordingly, this factor weighs in favor of approval.

### 6.      The Amount of Time Devoted to the Litigation

Class counsel reports over 1,000 hours of contingent work on this case for the past three years.  (Pl.'s Mot. at 7.)  Based on the amount of time expended on this matter, this factor weighs in favor of approval.

### 7.      Awards in Similar Cases

The Court must also take into consideration amounts awarded in similar actions when approving attorney fees.  Specifically, the Court must: (1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market.  See, e.g., In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013, *42–46 (D.N.J. Nov. 9, 2005).  While there is no specific benchmark for fee awards in the Third Circuit, there has been a "range of 19 percent to 45 percent of the settlement fund approved in other litigations." In re

Schering-Plough Corp. Sec. Litig., 2009 U.S. Dist. LEXIS 121173 at *14 (approving 23% fee in $165 million securities settlement); see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., *55 F.3d 768 (3d Cir. 1995)*, at 822 (noting a range of nineteen to forty-five percent); see also In re Ikon Office Solutions v. Stuart, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent").

With respect to awards in comparable settlements, a 30% fee is in line with other wage and hour settlements—including misclassification cases—within the Third Circuit.   See, e.g., In re Janney Montgomery Scott LLC Financial Consultant Litigation, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) (30% fee approved in $2,880,000 wage and hour case); Lenahan v. Sears, 2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006) (30% fee approved in $15,000,000 wage and hour case); Herring v. Hewitt, No. 3:06-cv-00267-GB (D.N.J. 2009) (30% fee approved in $4,900,000 misclassification case); In re Staples Inc. Wage & Hour Employment Practices Litig., No. 08-5746 (MDL-2025) (D.N.J. 2011) (28.5% fee approved in $42,000,000 retail misclassification case); Craig v. Rite Aid Corp., 2013 U.S. Dist. LEXIS 2658 (M.D. Pa. 2013) (32% fee approved in $20,900,000 retail misclassification settlement).  Given these cases, class counsel's request of $345,000 is reasonable and commensurate with awards in comparable cases.

The second part of this analysis addresses whether the requested fee is consistent with a privately negotiated contingent fee in the marketplace.  "The percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee [that] would be negotiated if the lawyer were offering his or her services in the private marketplace."  In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013, * 44–45.  "The object . . . is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been

feasible." In re Cont'l Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992); see also In re Synthroid Mktg. Litig., 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."). To determine the market price for an attorney's services, the Court should look to evidence of negotiated fee arrangements in comparable litigation.  In re Cont'l Ill. Sec. Litig., 962 F.2d at 573 (stating that the judge must try to simulate the market "by obtaining evidence about the terms of retention in similar suits, suits that only differ because, since they are not class actions, the market fixes the terms").  As explained more fully below, class counsel used standard hourly rates to calculate the lodestar amount.  (See Lesser Decl., Ex. E-F.)  These hourly billable rates are consistent with hourly rates routinely approved by this Court in complex class action litigation. See In re Merck & Co., 2010 U.S. Dist. LEXIS 12344 at *45; McGee, 2009 U.S. Dist. LEXIS 17199 at *50.

     In sum, for all the reasons stated above, the Court concludes that the requested fee by class counsel is fair and reasonable under the percentage-of-recovery method.  The Court will approve class counsel's application for attorney fees in the amount of $345,000.

     **C.     Lodestar Cross-Check**

     Although the Court has determined that class counsel's requested fees are reasonable under the percentage-of-recovery method, the Court will employ the lodestar method as an appropriate cross-check.  Varacallo, 226 F.R.D. at 249 ("While either the lodestar or percentage-of-recovery method should ordinarily serve as the primary basis for determining the fee, the Third Circuit has instructed that it is sensible to use the alternative method to double check the reasonableness of the fee." (internal quotation marks and citation omitted)).

26

The lodestar analysis is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." In re Rite Aid, 396 F.3d at 305; see also In re Diet Drugs Prod. Liab. Litig., 582 F.3d 524, 540 (3d Cir. 2009). When performing this analysis, the Court "should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." In re Rite Aid, 396 F.3d at 306. The lodestar figure is presumptively reasonable when it is calculated using a reasonable hourly rate and a reasonable number of hours. Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J., 297 F.3d 253, 265 n.5 (3d Cir. 2002) (citations omitted).

After calculating the lodestar amount, the Court may increase or decrease the amount using the lodestar multiplier. The multiplier is calculated by dividing the requested fee by the lodestar figure. "The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." In re Rite Aid, 396 F.3d at 305–06 (footnote omitted). The multiplier "need not fall within any pre-defined range, provided that the District Court's analysis justifies the award." Id. at 307 (footnote omitted). Further, the Court is not required to engage in this analysis with mathematical precision or "bean-counting." Id. at 306. Instead, the Court may rely on summaries submitted by the attorneys; the Court is not required to scrutinize every billing record. Id. at 306–07.

Based upon their hourly rates, class counsel calculated a combined lodestar figure of $608,392.67. (Pl. Mot. at 16.) In support of their fee application, class counsel provided detailed exhibits explaining the billing rates for each attorney that worked on the case. (See Lesser Decl., Ex. E-F.) Class counsel calculated the lodestar figure taking all of these billing rates into account. An examination of the hours expended by class counsel reveals that appropriate work was

performed by class counsel in light of the size and complexity of this case. Accordingly, the Court finds the billing rates to be appropriate and the billable time to have been reasonably expended. (See Lesser Decl., Ex. E-F.) The lodestar is thus presumptively reasonable. Therefore, the Court sees no reason to find the lodestar figure of $345,000 unreasonable.

Here, the lodestar multiplier is approximately 0.57. (Pl. Mot. at 16.) Indeed, because the lodestar is $608,392.67 and the requested fees are $345,000, the result is a *negative* lodestar multiplier. (Id.) This multiplier is *below* the range found to be acceptable by the Third Circuit and this Court. See In re Cendant Corp. PRIDES Litig., 243 F.3d at 734, 742 (approving a suggested multiplier of three and stating that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"); In re Schering-Plough Corp., 2012 U.S. Dist. LEXIS 75213, at *22 (noting that a 1.6 multiple "is an amount commonly approved by courts of this Circuit," and approving it as reasonable); McCoy v. Health Net, Inc., 569 F. Supp. 2d 448, 479 (D.N.J. 2008) (finding a multiplier of almost 2.3 to be reasonable). Thus, this Court considers the lodestar multiplier to be reasonable.

**D.     Expenses**

Class Counsel also seek reimbursement of $4,462.80 in litigation expenses to be paid from the $1.15 million award. (Pl.'s Mot. at 2.) "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." In re Safety Components Int'l, Inc., 166 F. Supp. 2d at 108 (citing Abrams v. Lightolier Inc., 50 F.3d 1204, 1225 (3d Cir. 1995)). Class counsel contends that these expenses reflect costs expended for the purposes of litigating this action, including costs associated with court fees, travel expenses, photocopying, mailing, telephone usage, and PACER/Lexis costs. (See Lesser Decl. ¶ 28.) The Court finds that the expenses were adequately documented and

28

reasonably and appropriately incurred in the litigation of the case.  See In re Datatec Sys. Sec. Litig., 2007 U.S. Dist. LEXIS 87428, at *27 (D.N.J. Nov. 28, 2007).

**E.     Enhancement Award**

Finally, class counsel also request that the Court approve the payment of a $7,500 enhancement award to Plaintiff Hegab.  (Pl.'s Mot. at 11.)  "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  Dewey v. Volkswagen of Am., 728 F. Supp. 2d 546, 577 (D.N.J. 2010) (internal quotation marks and citation omitted).  Class counsel explains that Plaintiff Hegab provided valuable information about his experiences working for Family Dollar, made himself available as needed, answered discovery, was deposed and stayed in touch with class counsel throughout the litigation.  (Pl.'s Mot. at 11.)  Modest enhancement/incentive awards are routinely approved.  See, e.g., In re Insurance Brokerage Antitrust Litig., 2007 WL 2916472 at *8 (D.N.J. Oct 5, 2007) ($10,000 incentive award to each plaintiff, resulting in total payment of $250,000); Lazy Oil Corp. v. Watco Corp., 95 F. Supp. 2d 290, 324-25, 345 (incentive awards of $5,000 to $20,000 awarded); Godshall v. Franklin Mint Co., 2004 WL 2745890 at *4 (E.D. Pa. Dec. 1, 2004) ($20,000 to each named plaintiff).  Given the duration of the litigation and the extent of personal involvement, the Court finds that Plaintiff Hegab is entitled to the requested enhancement award.

**F.     Summary of Attorney Fees, Expenses, and Enhancement Award Analysis**

For the foregoing reasons, the Court grants the application of class counsel for an award of attorney fees, reimbursement of expenses, and an enhancement award payment.

29

## VI.    **CONCLUSION**

Because the named Plaintiff has satisfied all of the requirements of Fed. R. Civ. P. 23, this Court certifies the class for purposes of this Settlement and approves the Settlement Agreement. The Court also grants the application of Class Counsel for attorney fees, reimbursement of expenses, and class representative enhancement.  An appropriate Order accompanies this Opinion

**Date:**  March 9, 2015

**HON. CLAIRE C. CECCHI**
**United States District Judge**